[No. B077707. Second Dist., Div. One. Nov. 16, 1994.]

FRED INOUYE, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Grassini & Wrinkle and Roland Wrinkle for Plaintiff and Appellant.

De Witt Clinton, County Counsel, Dennis M. Gonzales, Principal Deputy County Counsel, Greines, Martin, Stein & Richland, Timothy T. Coates and Randel L. Ledesma for Defendant and Respondent.

## OPINION

**MASTERSON, J.**—In this opinion we hold that Los Angeles County's (County) policy of deeming its off-duty safety police officers to not be engaged in the performance of their duties is ineffective to insulate the County from respondeat superior liability for the alleged wrongful conduct of an off-duty safety police officer in the course of making an arrest. We therefore reverse a summary judgment which was based on a finding to the contrary.

### BACKGROUND

David Parker is a longtime County safety police officer who is assigned to the department of health. While performing his duties, Parker carries a gun issued to him by the County.

On July 1, 1990, Parker worked the 4 p.m. to midnight shift. When his shift ended, Parker placed his County-issued gun in a weapons locker in accordance with County policy. He also removed a personally owned gun from the weapons locker and placed it in a holster on his belt. Parker then left work in his pickup truck.

About 12:45 a.m. Parker was proceeding on Pacific Coast Highway near Topanga Canyon Boulevard when a car driven by Fred Inouye attempted to ram Parker's truck from behind and run it off the road. Inouye pulled in front of Parker, stopped abruptly, and walked up to Parker's truck. Parker initially thought that Inouye might be attempting to commit a "bump-and-run" robbery. When Inouye started yelling through Parker's closed driver's side window, Parker decided to arrest him to determine whether he was under the influence of alcohol or drugs.

Through the still-closed window, Parker identified himself as a police officer and told Inouye to freeze. Inouye smashed the window.[1] Parker drew his gun. He again identified himself as a police officer and told Inouye to freeze. Inouye made a motion as if reaching for a weapon. Parker, in fear for his life, fired multiple shots at Inouye, hitting him in the hand and in the torso.

In an action for personal injury, Inouye alleged that Parker was acting as a peace officer at the time of the shooting. Inouye sought damages from Parker for his alleged wrongful conduct, and from the County under the doctrine of respondeat superior.

---

[1] At that point, Parker thought Inouye might be under the influence of phencyclidine (PCP).

The County moved for summary judgment, arguing that it was not subject to respondeat superior liability because Parker was not acting in the scope of his employment. In support of its motion, the County provided evidence of its "custom and policy" that safety police officers may use a County weapon only while on duty, and that they must place their County-issued gun in a weapons locker when going off duty. Moreover, County takes the "position" that safety police officers "are not engaged in the performance of their duties" in their off-duty hours.

The trial court accepted the County's argument that it was not subject to respondeat superior liability for Parker's off-duty conduct, and granted summary judgment in County's favor.

DISCUSSION

1.  *Introduction*

Penal Code section 830.31[2] grants peace officer status to safety police officers of the County of Los Angeles when making an arrest as to any public offense with respect to which there is immediate danger to person or property.[3] The sole issue presented on this appeal is whether the County's practice of deeming its off-duty safety police officers to not be engaged in the performance of their duties operates to insulate the County from potential liability for the torts of these officers. We find that it does not.

2.  *Standard of Review*

"The principles governing the application of the doctrine of respondeat superior to make an employer responsible for the torts of an employee are familiar and easily stated. '[A]n employer's liability extends to torts of

---

[2]Unless otherwise specified, all statutory references are to the Penal Code.

[3]Section 830.31 provides, in pertinent part: "The following persons are peace officers whose authority extends to any place in the state for the purpose of performing their primary duty or when making an arrest pursuant to Section 836 as to any public offense with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of that offense, or pursuant to Section 8597 or 8598 of the Government Code. These peace officers may carry firearms only if authorized, and under the terms and conditions specified, by their employing agency. [¶] (a) A safety police officer of the County of Los Angeles . . . ."

Section 836 generally authorizes a peace officer to make an arrest when the officer has reasonable cause to believe a public offense has been committed in the officer's presence, or that the person to be arrested has committed a felony.

Government Code sections 8597 and 8598 pertain to states of emergency.

an employee committed within the scope of his employment.[4] [Citation.] This includes willful and malicious torts as well as negligence. [Citation.]' [Citation.] Whether a tort was committed within the scope of employment is ordinarily a question of fact; it becomes a question of law, however, where the undisputed facts would not support an inference that the employee was acting within the scope of his employment. [Citation.]" (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 447 [256 Cal.Rptr. 766, 769 P.2d 948].)

⬛ Although factual conflicts were presented on summary judgment,[5] for purposes of this appeal the parties essentially agree that Inouye was injured while Parker was attempting to effect an arrest under section 836, and that the County deems that its safety police officers are not within the scope of their employment while they are off duty. We therefore treat the issue presented as one of law.

### 3. *Analysis*

Relying on case law, Inouye contends that summary judgment was improperly granted because a police officer is under a duty to apprehend criminals 24 hours a day. For example, in *People v. Derby* (1960) 177 Cal.App.2d 626, 628-629 [2 Cal.Rptr. 401], a defendant who had been in a fistfight at a bowling alley adjacent to the highway patrol station argued that he was improperly convicted of resisting a California Highway Patrol officer's efforts to arrest him because the officer had no duty to respond to the fistfight. The contention was rejected because, among other reasons, the officer was deemed to be on duty under former Vehicle Code section 2253 when " 'performing any of the duties imposed or authorized by law at any time during the 24 hours of the day.' " (177 Cal.App.2d at p. 630.)

In *Long v. Valentino* (1989) 216 Cal.App.3d 1287, 1290-1293 [265 Cal.Rptr. 96], a police officer who had been ejected from an American Civil Liberties Union conference on police espionage which he had been assigned to attend brought an action for money damages. In finding that the officer was entitled to the protections of the Unruh Civil Rights Act, the court observed that ". . . police officers are literally on duty 24 hours a day under California law. [Citations.]" (*Id.* at p. 1298.)

In *Orange County Employees Assn., Inc. v. County of Orange* (1993) 14 Cal.App.4th 575, 577 [17 Cal.Rptr.2d 695], special sheriff's officers, deputy

---

[4]This rule applies equally to an employer which is a public entity. (Gov. Code, § 815.2, subd. (a).)

[5]Inouye denied having engaged in any conduct which might have provoked the shooting. Parker testified at his deposition that he is a duly appointed peace officer at all times, authorized to use deadly force whenever necessary.

coroners, and court service officers who were granted peace officer status under sections 830.33, 830.35, and 830.36, argued that their employers could not prevent them from carrying concealed firearms while off duty.[6] Relying on section 12027, which exempts "duly appointed peace officers" from the general prohibition of section 12025 against carrying firearms, and several Attorney General opinions which discuss the right of special police officers to carry firearms in various contexts, the court held that the county could not prohibit its special officers from carrying concealed firearms while off duty. (14 Cal.App.4th at pp. 582-583.)[7] In reaching this conclusion, the court noted, in passing, that "off-duty officers sometimes must act as peace officers." (14 Cal.App.4th at p. 579.)

The County argues that Inouye's cases are inapposite because their dicta pronouncements regarding the 24-hour-a-day duty of police officers do not address the issue of potential civil liability of a peace officer's employer for the officer's conduct while off duty. We agree. We further agree with the County's position that no guidance is to be derived from *People* v. *Corey* (1978) 21 Cal.3d 738, 746 [147 Cal.Rptr. 639, 581 P.2d 644], and *Cervantez* v. *J. C. Penney Co.* (1979) 24 Cal.3d 579, 588 [156 Cal.Rptr. 198, 595 P.2d 975], which hold that the duties and immunities attendant to peace officer status do not apply to an officer engaged in the performance of outside employment as a private security guard.

Given the lack of applicable case law, the County asserts that the issue before this court is an open one. It is here that we reach our final point of agreement with the County. This is because the County next asserts that the issue should be resolved based on its policies regarding off-duty public safety officers, in conjunction with what it characterizes as the necessity of a public entity being able to limit its liability for the tortious conduct of its employees. We find that the County's approach ignores both the plain language of state law and the fundamental rule that such law takes precedence over inconsistent local policy.[8]

Section 830.31 was enacted in 1989 as part of comprehensive legislation which confirmed or granted peace officer status, subject to various terms and

---

[6] These statutes contain a provision identical to the last sentence of section 830.31 which permits on-duty officers to carry firearms only under the terms and conditions specified by their employing agencies.

[7] Although not an issue in this case, it may be presumed that Parker's gun was "concealed" in his holster under the authority of section 12027.

[8] We further reject the County's assertion that it is entitled to summary judgment based on the inapplicability of the policy objectives enunciated in *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 209 [285 Cal.Rptr. 99, 814 P.2d 1341]. In *Mary M.*, respondeat superior liability was imposed upon the employer of an on-duty police officer who specifically acted in violation of his official duties when he arrested a woman for driving under the influence, took her to her home, and raped her. (*Id.* at pp. 207, 209.) No such violation of duties occurred here.

conditions, to dozens of specialized police officers. (See Stats. 1989, ch. 1165, §§ 19-38, pp. 4490-4519, adding, repealing, or amending §§ 830-830.9.)[9] The history of the statute reveals that the broad scope of authority plainly granted by section 830.31 was no accident.

As of 1972, County safety police officers, who were then called security guards, were not given peace officer status under section 836, and were considered peace officers only as to offenses committed with respect to persons or property which the officer had an official duty to protect. (Former § 830.4; Stats. 1971, ch. 637, § 1, p. 1255.) This limitation remained when section 830.4 was substantially revised in 1977. (Stats. 1977, ch. 1073, § 1, p. 3266.) However, in a 1980 revision, the authority of County security officers (as well as others) was expanded to specifically include the power to effect arrests pursuant to section 836. (Stats. 1980, ch. 1340, § 12, p. 4724.)[10] The language of the 1980 revision of section 830.4 parallels present section 830.31. (See fn. 3, *ante*.)

■ It is fundamental that a county "is merely a political subdivision of the state over which the Legislature has the inherent right to prescribe the powers, duties and obligations for the purpose of exercising, on behalf of the state, the governmental functions of such subdivision." (*Riley* v. *Stack* (1932) 128 Cal.App. 480, 483 [18 P.2d 110]; see also *Drum* v. *Fresno County Dept. of Public Works* (1983) 144 Cal.App.3d 777, 783, fn. 2 [192 Cal.Rptr. 782].) ■ In section 830.31, the Legislature has clearly empowered safety police officers to make section 836 arrests while off duty. Accordingly, under state law, Parker was indisputably acting in the scope of his employment as a County safety police officer at the time Inouye was shot.

## 4. *Conclusion*

Especially in this era of great fiscal constraints, we understand why the County would seek to limit liability for the tortious conduct of its employees. However, it may not do so in a manner which is inconsistent with state

---

[9]As enacted, the statute contained stylistic differences which are not pertinent to this appeal.

[10]Former section 830.4 provided, in pertinent part:

"The following persons are peace officers while engaged in the performance of their duties in or about the properties owned, operated, or administered by their employing agency, or when they are required by their employer to perform their duties anywhere within the political subdivision which employs them. Such officers shall *also* have the authority of peace officers anywhere in the state as to an offense committed, or which there is probable cause to believe has been committed, with respect to persons or property the protection of which is the duty of such officer or when making an arrest pursuant to Section 836 of the Penal Code as to any public offense with respect to which there is an immediate danger to person or property or of the escape of the perpetrator of the offense. . . .

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(h) Security officers of the County of Los Angeles." (Italics added.)

law.[11] Inouye is therefore entitled to proceed against the County under the doctrine of respondeat superior. (See *Mary M.* v. *City of Los Angeles, supra,* 54 Cal.3d at pp. 215-216; *Jones* v. *City of Los Angeles* (1963) 215 Cal.App.2d 155, 157 [30 Cal.Rptr. 124].)[12]

DISPOSITION

The judgment is reversed. Appellant is to recover costs on appeal.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied February 2, 1995.

---

[11]This is not the first time the County has had difficulty in giving effect to statutory language regarding its safety police officers. In 1984, when the predecessor to section 830.31 was amended to redesignate the County's "security officers" as "safety police officers" (Stats. 1984, ch. 610, § 5, p. 2339), the County refused to make the change. On appeal following the officers' application for a writ of mandate, this court ordered that the County give these officers the designation to which they were lawfully entitled. (*Los Angeles County Safety Police Assn.* v. *County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1382-1383, 1390 [237 Cal.Rptr. 920].)

[12]For the purpose of proceedings on remand, we emphasize that the only issue we have resolved in this opinion is that the County's policy regarding off-duty safety police officers does not provide a defense to Inouye's allegation that the County is liable under the doctrine of respondeat superior. We express no view as to any other defenses potentially available to the County or to Parker.