Opinion
 

 EPSTEIN, Acting P. J.
 

 In October 1990, Adan Melendez was shot while attempting to obtain a refund for a ticket he had bought to an “underground” party that was broken up by police. He was one of many seeking refunds at the location where tickets to the concert had been sold. He was kicked by a security guard, then shot by another guard. His injuries are permanent and severe. Because the security guards were off-duty officers of the Los Angeles Police Department, an agency of the City of Los Angeles, he sued the city for damages. His wife sued for consortium damages. Both plaintiffs were successful, obtaining substantial verdicts that ripened into judgments. Their theories of recovery are barred by operation of Penal Code section 70, as we shall discuss. Because the bar of that statute applies, we must reverse the judgment against the city.
 

 Factual and Procedural Summary
 

 We must, of course, resolve all factual disputes in the case in favor of respondents, who were successful at trial, so long as that result is supported
 
 *4
 
 by substantial evidence. For the same reason, respondents are entitled to the benefit of all intendments that may be derived from the jury findings.
 
 (Bowers
 
 v.
 
 Bernards
 
 (1984) 150 Cal.App.3d 870, 873 [197 Cal.Rptr. 925] [substantial evidence rule];
 
 Rivard
 
 v.
 
 Board of Pension Commissioners
 
 (1985) 164 Cal.App.3d 405, 412 [210 Cal.Rptr. 509] [similar]; see also
 
 Short
 
 v.
 
 Nevada Joint Union High School Dist.
 
 (1985) 163 Cal.App.3d 1087, 1095 [210 Cal.Rptr. 297] [appellate review of denial of directed verdict];
 
 Sparks
 
 v.
 
 Owens-Illinois, Inc.
 
 (1995) 32 Cal.App.4th 461, 471 [38 Cal.Rptr.2d 739].) The following factual summary is based on that standard.
 

 Laslo Borzai made plans to hold an “underground” or “warehouse” party. These events are attended by persons who buy tickets, and in this case the price of admission was $20. Borzai rented the Gala Restaurant, owned by the Tassop Family Trust, for sale of tickets. A table was set up at an entrance to the restaurant, facing a parking area. Customers approached the table to buy tickets. Two young women sold the tickets. The restaurant opened for ticket sales about 9 p.m., and sales began shortly after that. Two persons were hired as security guards for the occasion. Their function was to protect the money collected. The guards were Thomas Burris and Stephen Oskierko. Each was a full-time officer of the Los Angeles Police Department (LAPD), and each was working this event while off duty. They were either employed directly by Borzai, or by Lawman Security which, it may be inferred, had contracted with Borzai. Neither guard was in uniform, and neither had the permission of the city to work on this occasion as a security guard.
 

 A friend of plaintiff/respondent Adan Melendez suggested that they go to the party, and Melendez eventually agreed to go. He and two friends arrived at the Gala Restaurant about 11 p.m., and had to wait about a half-hour to buy tickets. They then drove to the location of the party, a trip that required about another 10 minutes. They arrived to see the party being broken up by police. Given the circumstances, they did not try to go into thé party, but turned around and went back to the restaurant to obtain refunds.
 

 When they arrived there, about midnight, some 10 persons already were seeking refunds. The two women who had been selling tickets said that no refunds would be made, and some persons began to yell. Burris and Oskierko were present. Each was armed with an LAPD-approved pistol, each had his official badge attached to his belt. Instead of an LAPD uniform, each wore casual clothes and a blue nylon jacket on which the word “Security” was printed in large white letters, front and back.
 

 Burris and Oskierko approached the entrance area, telling the persons to be on their way. Someone said the two were security guards, hnd, in effect,
 
 *5
 
 could do nothing. Oskierko kicked the table that had been used for selling tickets, and it flipped over. He identified himself as a police officer, as did Burris. Burris also swept back his jacket, displaying his badge and gun. But the group of customers kept pressing forward, some yelling that the two were only security officers, not police. Oskierko drew his weapon and fired several shots at the ceiling. Someone said the shots were blanks, and Oskierko then fired a round into the overturned table or into the floor. During this time, Melendez walked into the room and up to Oskierko, intending to talk to him about a refund. Oskierko and Burris testified that Melendez grabbed Oskierko’s pistol, but the jury rejected that version. Oskierko kicked Melendez, causing him to crouch over. Burris shot Melendez in the back, then placed a knee at Melendez’s back and handcuffed him.
 

 Melendez is a paraplegic as a result of the shooting. Oskierko resigned from the LAPD, and accepted other employment as a police officer in the State of Washington. Burris was disciplined for failing to have LAPD permission to work the private security job, and for improper tactics in showing his gun. But he was not disciplined for shooting Melendez. The department ruled that showing his gun was out of policy, but that the shooting was within policy, based on Burris’s version of the events.
 

 Adan Melendez and his wife brought an action against the restaurant owner and operator, the underground party organizer, Officers Burris and Oskierko, Chief of Police Gates, and the City of Los Angeles. Melendez’s suit was for the injuries he had sustained. His wife sued for loss of consortium. Melendez and his wife eventually settled against the restaurant and party defendants, and dismissed Chief Gates. The case proceeded to trial, by Mr. and Mrs. Melendez against defendants Burris, Oskierko and the city. The city provided no defense to the officers, who appear not to have participated in the lawsuit beyond denying liability and testifying as witnesses.
 

 Respondents presented three theories of liability against the city: respondeat superior, based on the tortious acts of Burris and Oskierko; “direct” liability for failure of the City to adequately supervise these employees; and civil rights act liability under 42 United States Code section 1983.
 

 The jury returned a detailed special verdict. As reduced to a judgment, the award for Melendez against the city, Burris and Oskierko, was $9,250,000 less a good faith settlement amount of $550,000, for a net of $8,700,000. The loss of consortium award in favor of Mrs. Melendez was $750,000 against the city and Burris, and the same amount, $750,000, against the city and Oskierko. (The city attacks the special verdict as inadequate and confusing. We need not and do not reach that issue.) The city unsuccessfully
 
 *6
 
 moved for new trial and judgment notwithstanding the verdict.' It filed a timely notice of appeal. Neither Burris nor Oskierko has appealed.
 

 Discussion
 

 I
 

 Since it is central to the case, we begin with a discussion of Penal Code section 70 and related statutes. (For convenience, we hereafter refer to the former as section 70.) The statute has been amended several times since its initial enactment as a Field Code provision in 1872. In 1990, when the pertinent events in this case occurred, it read as follows:
 

 “(a) Every executive or ministerial officer, employee, or appointee of the State of California, or any county or city therein, or any political subdivision thereof, who knowingly asks, receives, or agrees to receive any emolument, gratuity, or reward, or any promise thereof, excepting such as may be authorized by law for doing an official act, is guilty of a misdemeanor.
 

 “(b) This section does not prohibit deputy registrars of voters from receiving compensation when authorized by local ordinance from any candidate, political committee, or statewide political organization for securing the registration of voters.
 

 “(c) Nothing in this section precludes a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, from engaging in, or being employed in, casual or part-time employment as a private security guard or patrolman for a public entity while off duty from his or her principal employment and outside his or her regular employment as a peace officer of a state or local agency, and exercising the powers of a peace officer concurrently with that employment, provided that the peace officer is in a police uniform and is subject to reasonable rules and regulations of the agency for which he or she is a peace officer and within the provisions of subdivisions (k) and (Z) of Section 7522 of the Business and Professions Code. Notwithstanding the above provisions, any and all civil and criminal liability arising out of the secondary employment of any peace officer pursuant to this subdivision shall be borne by the officer’s secondary employer.
 

 “It is the intent of the Legislature by this subdivision to abrogate the holdings in People v. Corey, 21 Cal.3d 738 [147 Cal.Rptr. 639, 581 P.2d 644], and Cervantez v. J.C. Penney Co., 24 Cal.3d 579 [156 Cal.Rptr. 198, 595 P.2d 975], to reinstate prior judicial interpretations of this section as
 
 *7
 
 they relate to criminal sanctions for battery on peace officers who are employed, on a part-time or casual basis, by a public entity, while wearing a police uniform as private security guards or patrolmen, and to allow the exercise of peace officer powers concurrently with that employment.
 

 “(d) Nothing in this section precludes a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, from engaging in, or being employed in, casual or part-time employment as a private security guard or patrolman by a private employer while off duty from his or her principal employment and outside his or her regular employment as a peace officer, and exercising the powers of a peace officer concurrently with that employment, provided that all of the following are true:
 

 “(1) The peace officer is in his or her police uniform.
 

 “(2) The casual or part-time employment as a private security guard or patrolman is approved by the county board of supervisors with jurisdiction over the principal employer or by the board’s designee or by the city council with jurisdiction over the principal employer or by the council’s designee.
 

 “(3) The wearing of uniforms and equipment is approved by the principal employer.
 

 “(4) The peace officer is subject to reasonable rules and regulations of the agency for which he or she is a peace officer and within the provisions of subdivisions (k) and (Z) of Section 7522 of the Business and Professions Code.
 

 “Notwithstanding the above provisions, a peace officer while off duty from his or her principal employment and outside his or her regular employment as a peace officer of a state or local agency shall not exercise the powers of a police officer if employed by a private employer as a security guard during a strike, lockout, picketing, or other physical demonstration of a labor dispute at the site of the strike, lockout, picketing, or other physical demonstration of a labor dispute. The issue of whether or not casual or part-time employment as a private security guard or patrolman pursuant to this subdivision is to be approved shall not be a subject for collective bargaining. Any and all civil and criminal liability arising out of the secondary employment of any peace officer pursuant to this subdivision shall be borne by the officer’s principal employer. The principal employer may require the secondary employer to enter into an indemnity agreement as a condition of approving casual or part-time employment pursuant to this subdivision.
 

 
 *8
 
 “It is the intent of the Legislature by this subdivision to abrogate the holdings in People v. Corey, 21 Cal.3d 738, and Cervantez v. J. C. Penney Co., 24 Cal.3d 579, to reinstate prior judicial interpretations of this section as they relate to criminal sanctions for battery on peace officers who are employed, on a part-time or casual basis, while wearing a police uniform approved by the principal employer, as private security guards or patrolmen, and to allow the exercise of peace officer powers concurrently with that employment.” (Fns. omitted.)
 

 (This is the 1984 version of the statute. It was amended again, in 1997 (Stats. 1997, ch. 452, § 7) to provide that the principal employer
 
 shall
 
 require the secondary employer to enter into an indemnity agreement as a condition to approving the casual or part-time employment.)
 

 We shall return to a discussion of section 70 and the case law it affects. Before doing so we briefly refer to related statutes.
 

 Penal Code section 830, and following provisions, define who are peace officers in California. The list includes sworn police officers of any city. (Pen. Code, § 830.1, subd. (a).) It is undisputed that Burris and Oskierko were peace officers within this definition. A peace officer is authorized to arrest for a public offense reasonably believed to have been committed in his or her presence. (Pen. Code, § 836, subd. (a)(1).)
 

 Government Code section 1126 is a conflict of interest provision, generally prohibiting local public agency employees from engaging in inconsistent or incompatible employment. Unless approved by the appointing power, local public employees may not perform work for compensation outside their regular work, if their efforts will be subject to approval of some other officer or agency. Outside employment may be prohibited if it involves use of the badge or uniform of the employee’s regular employment. (See 65 Ops.Cal.Atty.Gen. 631, 636 (1982).)
 

 The Business and Professions Code provisions referred to in section 70 are part of the Private Security Services Act, which governs licensing of persons and entities to engage in the private security business. Former section 7522 is now found in section 7582.2 of the same code. It provides exceptions to coverage of the statute. Subdivision (k) refers to peace officers while employed by a private employer pursuant to Government Code section 1126, and subdivision (Z) refers to retired peace officers.
 

 II
 

 It has been, and remains, the rule that peace officers such as sworn personnel of the LAPD retain peace officer status and authority, both during
 
 *9
 
 and beyond regular duty hours. (See
 
 People
 
 v.
 
 Derby
 
 (1960) 177 Cal.App.2d 626, 630 [2 Cal.Rptr. 401].) A handful of older cases has examined the consequences of a peace officer working part time, during off-duty hours, for a private employer.
 

 In
 
 Dowdell
 
 v.
 
 Owl Drug Co.
 
 (1932) 121 Cal.App. 316 [8 P.2d 890], an off-duty policeman, working as a security guard for a drug store, caused the plaintiff to be arrested for shoplifting. The arrestee sued for false arrest, and recovered a $25,000 judgment. In reversing the judgment, the court pointed out that the guard was a peace officer, authorized to make an arrest on reasonable belief that a felony had been committed. The trial court, it appeared, had erroneously told the jury that there was no reasonable cause for arrest unless the value of property taken exceeded $200. (121 Cal.App. at p. 319.) The court did not explicitly address whether the security guard was a peace officer when the arrest occurred, but that conclusion was implicit in its application of the peace officer statutes.
 

 People
 
 v.
 
 Hooker
 
 (1967) 254 Cal.App.2d 878 [62 Cal.Rptr. 675] also involved a policeman working off-duty as a security guard for a drug store. The person he attempted to arrest for shoplifting resisted, and the issue was whether that person was guilty of battery on a police officer (Pen. Code, § 243). The guard was wearing his police uniform when the events occurred. The court held that the fact that the officer was working for a private employer when the battery occurred “need not weaken or destroy his continuing authority as a peace officer.” (254 Cal.App.2d at p. 882.)
 

 A third case,
 
 People
 
 v.
 
 Millard
 
 (1971) 15 Cal.App.3d 759 [93 Cal.Rptr. 402], involved the activities of two off-duty officers working as security guards for a store. The arrestee argued that his Fourth Amendment rights were violated because a guard had conducted an unreasonable, warrantless search. The prosecution countered that the guard was acting as a private security guard at the time, and, as a result, the Fourth Amendment had no application. The court disagreed, holding that in making the arrest the officer was acting as a police officer, not as a private person. Since the search by a police officer was not justified, the conviction was reversed.
 

 Another case, decided shortly after
 
 Millard,
 
 concerned an off-duty police officer working during off-duty hours as a guard at a high school dance. In
 
 People
 
 v.
 
 Townsend
 
 (1971) 20 Cal.App.3d 688 [98 Cal.Rptr. 25], the principal issue was whether the defendant was subject to the enhanced crime of battery on a police officer (Pen. Code, § 243). The court held that he was. (20 Cal.App.3d at p. 696.)
 

 Each of these cases was disapproved by the Supreme Court. The Supreme Court decisions were a year apart, each written by the same justice. No later
 
 *10
 
 Supreme Court decision has questioned the correctness or application of either case.
 

 The first case is
 
 People
 
 v.
 
 Corey
 
 (1978) 21 Cal.3d 738 [147 Cal.Rptr. 639, 581 P.2d 644]. Like
 
 Hooker
 
 and
 
 Townsend,
 
 it involved Penal Code section 243, battery on a peace officer. The issue was whether that statute applied to a battery on a peace officer who was privately employed, for compensation, as a security guard when the battery occurred. The holding is that it does not. The guard, Anderson, was an officer of the Sacramento Police Department. He was employed during off-duty hours to provide security at a dance sponsored by a private association. A would-be patron, trying to force entrance, struck the officer when he tried to apprehend her. (21 Cal.3d at p. 741.)
 

 The court reviewed the statutory definition of peace officer, (“any policeman of a city . . . regularly employed and paid as such”), the Private Investigator and Adjuster Act (then, Bus. & Prof. Code, § 7500 et seq.), a published opinion of the Attorney General and, especially, section 70. At that time, section 70 did not include any of the material now in subdivisions (c) and (d).
 

 The court wrote: “[T]he Legislature has specifically made illegal the receipt by any public employee or officer of any ‘emolument, gratuity or reward, or promise thereof... for doing an official act.’ (Pen. Code, § 70.) Thus, the law and policy of this state forbid the policeman here involved from receiving pay from the sponsors of the event for performing his official duties: Thus,
 
 if what Officer Anderson was doing was not in violation of law (Pen. Code, § 70), it must be because on his off-duty hours he was not performing his official duties, but rather performing only a private duty pursuant to contract. If he were engaged in such contractual activity, he was not engaged in the performance of his official duty, so as to bring the felony provisions of Penal Code section 243 into operation.
 
 There is no reason to impute to the Legislature any intent to furnish to one acting as a private patrolman any special protection just because he is also in the employ of a city as a policeman.”
 
 (People
 
 v.
 
 Corey, supra,
 
 21 Cal.3d at pp. 745-746, fn. omitted, italics added.)
 

 It followed, the court held, that Penal Code section 243, which serves to protect peace officers engaged in the performance of their duties by providing enhanced punishment for those who commit a battery on such an officer, “does not apply to peace officers who are assaulted within the course and scope of their private employment as security guards.”
 
 (People
 
 v.
 
 Corey, supra,
 
 21 Cal.3d at p. 746.) The
 
 Hooker
 
 and
 
 Townsend
 
 cases were disapproved to the extent they were inconsistent with the court’s opinion.
 
 (Ibid.)
 

 
 *11
 
 The dissenting justice argued it does not follow that, because aii off-duty peace officer is performing duties as a private security guard, he cannot use all reasonable force to make an arrest as a peace officer.
 
 (.People
 
 v.
 
 Corey, supra,
 
 21 Cal.3d at pp. 747-748 (cone, and dis. opn. of Clark, J.).) The dissent is significant because it is a succinct summary of the view rejected by the majority.
 

 The second case, by a unanimous court, is
 
 Cervantez
 
 v.
 
 J. C. Penney Co.
 
 (1979) 24 Cal.3d 579 [156 Cal.Rptr. 198, 595 P.2d 975], In that case, an off-duty officer, Dahlke, arrested a customer for shoplifting. Dahlke was working as a private security guard for a store when he made the arrest. The customer sued for false arrest and imprisonment, and various torts. The trial court’s instructions were based on the conclusion that the guard was acting as a peace officer when the arrest was made, a result consistent with the
 
 Dowdell
 
 and
 
 Millard
 
 decisions. The court reversed the ensuing judgment for the defendants. It reiterated its
 
 Corey
 
 decision of the previous year: “Since a police officer is forbidden from receiving private payment for the performance of his official duties, we concluded in
 
 Corey
 
 that the officer there must have been performing private rather than official duties while he was acting within the course and scope of his private employment as a security guard during his off-duty hours.” (24 Cal.3d at p. 588.)
 

 That reasoning informed the decision in
 
 Cervantez:
 
 “If what Dahlke was doing was not in violation of Penal Code section 70, it must be because he was performing private rather than official duties while he was acting within the course and scope of his private employment with J. C. Penney. If Dahlke was performing only a private contractual duty at the time he arrested plaintiff, it logically follows that he was not acting pursuant to his official duties as a peace officer. Since it would have been illegal for Dahlke to have been acting as a peace officer in the performance of official duties at the time he arrested plaintiff pursuant to his private employment, we conclude that Dahlke was acting as a private citizen when he arrested plaintiff.
 
 It is thus the fact of private employment which operates to prevent a peace officer from acting in what would otherwise be his official
 
 capacity.” (24 Cal.3d at p. 588, italics added.) The court disapproved the
 
 Dowdell
 
 and
 
 Millard
 
 cases to the extent that they were inconsistent with its opinion. (24 Cal.3d at pp. 588-589.)
 

 Respondents argue that
 
 Cervantez
 
 is distinguishable because there was a stipulation in the case that Dahlke was working as a full-time employee of a local police department and was acting within the scope of his employment at the Penney store when he made the arrest. The problem with this attempted distinction is that it played no role in the rationale of the Supreme Court’s decision. (Respondents do not try to distinguish
 
 Corey
 
 on its facts.)
 

 
 *12
 
 If one were to snapshot the law as it emerged after the
 
 Corey
 
 and
 
 Cervantez
 
 decisions, it was simply this: A peace officer who works as a security guard for pay by a private employer does not act as a peace officer during that private employment.
 

 Ill
 

 The Legislature responded, and the nature of its response is especially instructive.
 

 A 1982 amendment reformulated section 70 into subdivisions (a), (b) and (c). The substance of subdivision (c) allowed a peace officer to work, part time, off-duty, and for pay, as a private security guard for a
 
 public
 
 entity, so long as he or she did so in uniform and was subject to reasonable rules and regulations of the officer’s principal law enforcement agency. If these requirements were met, the officer’s acts were within the scope and protection provided by the law to peace officers exercising their official functions. Penal Code section 243 also was amended to apply to batteries against peace officers under these circumstances. (§ 70, subd. (c), and see 1 Assem. Final Hist. (1981-1982) Statutory Record, p. 243;
 
 Selected 1982 Cal. Legislation
 
 (1982) 14 Pacific LJ. 357, 555.) Since Burris and Oskierko were working for a
 
 private
 
 employer when Melendez was shot, this statutory change does not directly apply to the case. But the next one does.
 

 The final reformulation of section 70 (to date) came in 1984, resulting in the provision as we have set it out earlier in this opinion. (See generally,
 
 Selected 1984 Cal. Legislation
 
 (1984) 16 Pacific L.J. 461, 612.) This legislation added subdivision (d), which establishes peace officer status in peace officers who work part time as security guards for private employers. Unlike subdivision (c), which applies to part-time work for public entities, the benefits of subdivision (d) only apply “provided that all” of the circumstances in each of four enumerated subdivisions are true. Three of these are significant here: that the officer be in police uniform during the employment; that the part-time work is approved by the governing entity of the principal employer, or by the law enforcement agency as its designee; and that the principal employer approves the wearing of uniforms for such off-duty work.
 

 If each of these provisions is satisfied,
 
 then
 
 the officer enjoys peace officer status in his or her part-time work. To that degree, the
 
 Corey
 
 and
 
 Cervantez
 
 decisions are abrogated in favor of preexisting law. And the principal employer is liable for all civil and criminal liability flowing from the part-time work. (Although an indemnity agreement is encouraged, and now required, from the secondary employer.)
 

 
 *13
 
 Taken together, these provisions present a comprehensive statutory scheme. If a police officer is to work as a private security guard for a private employer, members of the public must have the full notice provided by the uniform that the person is acting as a peace officer. They are thus effectively warned to govern their activity accordingly. And the principal employer has full control: It may allow its officers to work part time, or not, according to its policy. It may, for example, allow some to do so while declining permission to others who have a doubtful record in connection with excessive force.
 

 And an officer cannot work as a security guard for a private employer in connection with a labor dispute. Why is that exception provided? Because without it, the officer
 
 would
 
 have the authority and protection afforded peace officers while working for an employer in a labor dispute—a circumstance the Legislature did not want to allow.
 

 The exceptions prove the rule. Peace officers who work as private security guards pursuant to the conditions laid out in the statute have the authority and protection given peace officers in their usual, public work. Otherwise, they do not.
 

 Several formal Attorney General opinions support these conclusions. (See 65 Ops.Cal.Atty.Gen. 631, 636 (1982) [in light of Gov. Code, § 1126, police officers may not wear official uniform in private employment without permission of employing police agency]; 68 Ops.Cal.Atty.Gen. 80, 83 (1985) [reserve deputy sheriffs not peace officers when performing services as employees of private patrol operator]; 69 Ops.Cal.Atty.Gen. 119, 123 (1986) [under § 70, subd. (d), local agency employer of police officer not liable for acts of officer while engaged in work as off-duty private security guard wearing uniform of private employer].) These opinions, while not binding, are entitled to weight, and absent controlling authority, are persuasive. (See
 
 California Assn, of Psychology Providers
 
 v.
 
 Rank
 
 (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2].)
 

 Respondents point out that the statute is explicit in declaring when off-duty officers have the authority of peace officers, but that it does not literally say that police officers are without this authority when the statutory conditions are not satisfied. No doubt, it would have been clearer if this additional provision had been stated, but in the context of this statute it would almost be like an “and we really mean it” provision. The
 
 Corey
 
 and
 
 Cervantez
 
 cases already declare that police officers do
 
 not
 
 act as peace officers when privately employed and paid as security guards. The statutory response was to allow measured and circumscribed exceptions to that rule. No other construction of the statute makes sense.
 

 
 *14
 
 As we have pointed out, neither Burris nor Oskierko was in uniform when Melendez was shot; neither had permission to do the off-duty work he was doing (the officer who did not resign was disciplined for doing it); and neither was authorized to work this unapproved assignment. Whatever these officers may have thought at the time, it follows that neither was acting as a peace officer when Melendez was shot.
 

 Since the officers were acting without official authority, there can be no respondeat superior basis for city liability.
 

 The application of section 70, subdivision (d) was called to the attention of the trial court in the city’s motion for a directed verdict. Rejecting the city’s argument, the trial court read a passage from
 
 Inouye
 
 v.
 
 County of Los Angeles
 
 (1994) 30 Cal.App.4th 278, 281 [35 Cal.Rptr.2d 367]: “The sole issue presented on this appeal is whether the County’s practice of deeming its off-duty safety police officers to not be engaged in the performance of their duties operates to insulate the County from potential liability from the torts of these officers. We find that it does not.”
 

 The trial court misread
 
 Inouye.
 
 The question in that case was whether a public entity could insulate itself from liability for wrongful acts of its peace officer employees by the device of declaring that they are not acting as peace officers while off duty. That ran against statutory provisions about the scope of peace officer duties and responsibilities. The
 
 Inouye
 
 court went on to say, “We further agree with the County’s position that no guidance [for the case at hand] is to be derived from [the
 
 Corey
 
 and
 
 Cervantez
 
 cases], which hold that the duties and immunities attendant to peace officer status do not apply to an officer engaged in the performance of outside employment as a private security guard.” (30 Cal.App.4th at p. 283.) That was not the issue in
 
 Inouye,
 
 but it is in our case.
 

 Because the trial court concluded that section 70, subdivision (d), did not apply to the case, the jury was not instructed on any of the four “proviso” elements of that statute. Those elements simply were not addressed.
 

 IV
 

 The same circumstance defeats respondents’ second basis of liability, that the city failed to adequately supervise Burris and Oskierko. Respondents focus on citizen complaints against Burris, and on expert opinion testimony that the department was not sufficiently sensitive to complaints of excessive force. The city argues that the complaints in hand were not sufficient to alert it to any dangerous propensity by either officer. We need not and do not
 
 *15
 
 decide that issue. As we have discussed, each officer was acting on his own, and without city approval or, so far as the record shows, even knowledge. A major feature of section 70, subdivision (d) is the provision giving the principal law enforcement agency the authority to allow or not allow a particular officer to work a particular private security guard assignment. If a city in the situation of the city in this case could be held liable, the protection of the statute would be entirely removed and its condition meaningless. That is not a permissible construction.
 

 V
 

 Respondents argue, however, that section 70, subdivision (d) has no application to this case because by the time the shooting occurred, Burris and Oskierko had completed their work as security guards and, like Cinderella’s coach, had reverted to their former status, as off-duty peace officers with all rights and responsibilities that attach to that status. The argument is based on evidence, which we take as credited, that their sole responsibility was to guard the money collected from ticket sales.
 

 There are at least two problems with this theory. The first is that it relies on an overly narrow reading of the statute. Section 70, subdivision (d) provides that, if its four enumerated conditions are satisfied, the principal employer (here, LAPD) is responsible for “[a]ny and all civil and criminal liability arising out of the secondary employment . . . .” Burris and Oskierko were at the Gala Restaurant solely on account of their engagement by, or through, Laslo Borzai, the party promoter. There was evidence that this secondary employment is the reason they were still there when customers returned seeking refunds. If so, the liability that ensued arose out of the secondary employment. Conceivably, that was a jury issue. Unfortunately, because of the view the trial court took of the statute, the jury was never instructed on the point.
 

 The second problem is more fundamental. Respondents rely on testimony that the last courier to be escorted to a car had driven off with ticket proceeds before customers began to return, seeking refunds. The last courier to be escorted off the property left about midnight. Burris was asked whether it was fair to say that by the time he or Oskierko escorted that courier, “there was no other money in the Gala which was a result of the ticket sales, correct?” Burris answered, “Yes, sir.”
 

 We must take it as true that the last time either Burris or Oskierko escorted a courier with ticket money to his or her car was about midnight, and that all ticket proceeds received to that point, not already transported,
 
 *16
 
 went with that courier. But the uncontroverted evidence also shows that the ticket sellers were still at the table about midnight when Melendez and his companions returned to the restaurant, and that tickets were still being sold. One of the sellers was “gripping the cash box.” There was a line to buy tickets. And the restaurant manager, Tassop, had been told to keep the place open until 12:30 or 1 a.m. Thus, Burris and Oskierko had not yet completed their service, even assuming that their only responsibility was to “guard the money.”
 

 VI
 

 Respondents’ final theory of liability against the city is that Burris and Oskierko violated their civil rights, protected by the civil rights act, 42 United States Code section 1983. That law imposes liability on “[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws” of the United States.
 

 Respondents count on evidence that Burris and Oskierko used excessive force in the encounter, and that there is a pattern of such problems when the law enforcement agency fails to deal properly with problems of excessive force, as the LAPD did in this case.
 

 Section 1983 extends to local as well as to state governments. (See
 
 Monell
 
 v.
 
 New York City Dept, of Social Services
 
 (1978) 436 U.S. 658, 694 [98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611].) But not every act by a government agent, violating a federal right, triggers liability. The court’s task is to “identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.”
 
 (Jett
 
 v.
 
 Dallas Independent School Dist.
 
 (1989) 491 U.S. 701, 737 [109 S.Ct. 2702, 2724, 105 L.Ed.2d 598].) The status of a person as a government employee whose acts can trigger liability under the law is determined by state law.
 
 (McMillian
 
 v.
 
 Monroe County
 
 (1997) 520 U.S. 781, _[117 S.Ct. 1734, 1737, 138 L.Ed.2d 1]. Even then, the government may not be held liable solely because it employs an errant officer; “[i]nstead, it is when execution of a government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.”
 
 (Monell
 
 v.
 
 New York City Dept, of Social Services, supra,
 
 436 U.S. at p. 694 [98 S.Ct. at pp, 2037-2038], quoted in
 
 Pitts
 
 v.
 
 *17
 

 County of Kern
 
 (1998) 17 Cal.4th 340, 349 [70 Cal.Rptr.2d 823, 949 P.2d 920].)
 

 The injury suffered by respondents did not flow from any state policy or custom. Nor was there a state actor whose actions triggered the statute. Neither Burris nor Oskierko was acting as a peace officer or in any other public capacity in connection with the events at the Gala Restaurant. Nor are any city employees responsible, since none approved of Burris’s or Oskierko’s employment at the restaurant, much less of their use of force.
 

 There is, in sum, no basis to hold the city liable under section 1983, or under any other theory respondents have presented.
 

 Disposition
 

 The judgment is reversed with directions to enter a new and different judgment in favor of the city as against respondents. Appellant to have its costs on appeal.
 

 Hastings, J., and Czuleger, J.,
 
 *
 
 concurred.
 

 A petition for a rehearing was denied May 5, 1998, and respondents’ petition for review by the Supreme Court was denied June 24, 1998. Mosk, J. was of the opinion that the petition should be granted.
 

 *
 

 Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.