Filed 4/21/23 Weathers v. Clausen CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LISA M. WEATHERS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>RONALD CLAUSEN et al.,<br><br>Defendants and Respondents. | A163208<br><br>(Contra Costa County<br>Super. Ct. No. C1701011) |

Following a successful unlawful detainer case against her, appellant Lisa Weathers was evicted from the office she leased. Weathers then filed a complaint alleging eight causes of action against nine defendants, including the four respondents here: the LLC that had owned the property and with which she had the lease, an attorney who was also the principal owner of the LLC and managed the property, and two of the attorney's employees. Each defendant filed a motion for summary judgment or, in the alternative, summary adjudication. Weathers did not file any opposition. The trial court granted summary judgment, noting that, in addition to Weathers's non-opposition, "the court has independently reviewed defendants' . . . papers" and "is satisfied that defendants' evidence adequately negates one or more elements of each of plaintiff's causes of action, and therefore that summary judgment is appropriate." We affirm.

1

## BACKGROUND

### The Parties, the Lease, and the Unlawful Detainer

Appellant Weathers is a former tenant at an office building called The Executive Centre, located on Brickyard Cove Road in Point Richmond (the property).

Respondents are four of the defendants named in Weathers's lawsuit below:

(1) Rock Creek Ventures, LLC, d/b/a The Executive Centre at Point Richmond (Rock Creek Ventures), a limited liability company registered with the State of California on June 20, 2002, which was dissolved as of December 21, 2016. Rock Creek Ventures was the owner of record of the property until September 2016, at which time it sold the property to Cove Investments, LLC d/b/a Brickyard Cove Marina (Cove Investments).

(2) Ronald Clausen, a California attorney and the principal owner and manager of Rock Creek Ventures from its registration until its dissolution.

(3) and (4) Susan De Los Reyes and Stephanie James, office and legal assistants to Clausen, who as part of their employment assisted Clausen in the leasing and managing the building when Rock Creek Ventures owned it. Neither was ever employed by Rock Creek Ventures.

Weathers's tenancy at the property began on October 1, 2014 when she entered into a lease with Rock Creek Ventures for office space and services. Shortly after entering into the lease, Weathers began to fall behind in her rent, failing to pay rent for April and May 2015. And on May 11, De Los Reyes sent Weathers a letter requesting that she vacate her office. She did not.

On June 5, due to a security breach, the locks on all the offices in the property were changed, and all tenants were advised of the change via email

the same day. Weathers did not pick up a new key. On July 8, De Los Reyes again emailed Weathers, this time to advise her to come and pick up her belongings.

On July 17, Rock Creek Ventures filed an unlawful detainer action against Weathers in Contra Costa County Superior Court. At a hearing on September 24, the case was dismissed without prejudice, due to a procedural error for failure to state the exact amount of rent and damages owed by Weathers.

On March 18, 2016, Rock Creek Ventures sent Weathers a 30-day notice to vacate. She did not, and on May 18, she was served with a notice of intent to enter the premises to take inventory of any abandoned property.

On July 8, Dennis Phillips, an attorney for the property, sent Weathers a 3-day notice to pay rent or quit.

On November 30, Cove Investments, now the owner of the building, filed another unlawful detainer action against Weathers.[1] Judgment was entered in favor of Cove Investments and Weathers was ordered to vacate the premises.

This lawsuit followed.

**The Proceedings Below**

On May 31, 2017, representing herself, Weathers filed a complaint naming nine defendants, and alleging eight causes of action, styled as follows: (1) tortious interference with prospective economic advantage; (2) breach of contract; (3) fraud; (4) defamation; (5) intentional infliction of

---

[1] Although it is not in the summary judgment material, at oral argument Weathers represented that this was the third unlawful detainer action against her, which counsel for respondents admitted. And while it is not authenticated, an exhibit to Weathers's complaint supports that this is so.

3

emotional distress; (6) conspiracy; (7) conversion; and (8) abuse of process. Seven of the eight causes of action were against all defendants, all but the second, which was against only Rock Creek Ventures and Clausen.

In September an answer was filed on behalf of the four respondents.[2] And for some three years the case proceeded in the trial court, in part necessitated by many discovery-related issues.

In October 2020, respondents each filed separate motions for summary judgment or, in the alternative, summary adjudication, which motions were set for hearing on January 20 and 27, 2021 before the Honorable Jill Fannin, to whom the case had been assigned for all purposes.[3] Each of the motions was comprehensive, each totaling over 200 pages of material in support, which included a memorandum of points and authorities, a lengthy separate statement, and declarations supporting the facts in the separate statement, each motion accompanied by at least three, and sometimes four, declarations, including a lengthy declaration of attorney Davis J. Reilly that authenticated numerous exhibits, as many as 17.

Among other things, the moving papers cited to, and sometimes quoted from, Weathers's responses to written discovery and her deposition, all as discussed in detail below. And each motion demonstrated, on a cause of action by cause of action basis, that none of the eight causes of action had merit.

Weathers did not file opposition to any of the four motions, and on January 21, each of the respondents filed a notice of non-opposition.

_____

[2] As to the other five defendants—three of whom were sur-named Clausen—Weathers filed a dismissal with prejudice in August 2018.

[3] On December 1, 2020 all motions were rescheduled to January 27.

4

On January 26, Judge Fannin issued tentative rulings on each of the motions, granting them. The tentative rulings were not contested, and on January 27, she entered orders on each of the motions that read as follows: "The motions for summary judgment, brought by the four remaining defendants, are granted. Defendants shall prepare a proposed judgment of dismissal, separate from any formal order on the motions, and shall submit that proposed judgment directly to the Court. [¶] Defendants' motions are unopposed. Nevertheless, the Court has independently reviewed defendants' opening papers. The Court is satisfied that defendants' evidence adequately negates one or more elements of each of plaintiff's causes of action, and therefore that summary judgment is appropriate.

"There being no opposition to the Court's Tentative Ruling, same is adopted as follows:

"AS ABOVE.

"MSJ IS GRANTED.

"JUDGMENT ORDERED."

Judgment was entered for respondents, from which Weathers appealed.

## DISCUSSION

**Introduction, and Some Observations About Weathers's Brief**

Weathers has submitted a 35-page opening brief whose table of contents reads as follows:

"TABLE OF AUTHORITIES            3

"STATEMENT OF THE CASE          4

"STATEMENT OF APPEALABILITY     12

"STATEMENT OF FACTS             12

"ARGUMENT                       14

"THE STANDARD OF REVIEW         18

"ELEMENTS OF THE ACTIONS                    18

"CONCLUSION                                 33."

The "statement of the case" begins with several pages of narrative by Weathers describing her claimed background, experience, expertise, and accomplishments, none of which has any citation to the record—not to mention any relevancy to the issue before us. It then describes, in self-serving fashion, her claimed relationship with the property, along the way acknowledging her late payments and how "[i]nitially, the ladies [De Los Reyes and James] were patient with the late payments . . .but by May 2015, Ms. Weathers had not paid April or May's rent and the patience was gone."

The statement goes on to refer to some quotations from cases, none of which has any application here. It then makes some references to her interference claim. And it ends with this: "The court did not detect the fraud being perpetrated upon it, nor did the court recognize that the evidence being presented in the Motion for Summary judgment failed to actually meet its burden to prove that either there are no triable facts or that Appellant cannot prove her causes of action and for those reasons, the judgment should be reversed."

The short one and one-half page "Statement Of Facts" reads in its entirety as follows:

"Defense has the burden and must meet the initial burden through material and undisputed facts. Defense cannot simply cite to evidence to what amounts to evidence that may or may not support a material fact. Only where the court finds that the defense has met their burden should the Plaintiff even have to oppose the motion. *Reeves v. Safeway Stores (2004) 121 Cal.App.4th 95, 105-106.*

"Ms. Weathers did not oppose the motion for Summary judgment because (before the Opposition was due) she had communicated with Attorney Davis Reilly, and explained that she had been taking care of her ill mother, and was willing to settle the case and dispose of the matter–to which Mr. Reilly confirmed his confidence that his clients were willing to settle.

"The emailed conversation was around the holidays Nov/Dec 2020 and Ms. Weathers felt satisfied that she would indeed receive and accept an offer, so subsequently devoted all of her non-working hours to her mother's need for care, but in mid to late January 2021, having lost track of time, never having heard back from Mr. Reilly, and having missed the deadline to oppose the Motion for Summary Judgment, Ms. Weathers was then inundated and overwhelmed with service of numerous motions by Mr. Reilly, including notices of no opposition, a request for over $250,000 in attorney's fees, Motions in Limine to preclude expert testimony, to exclude general statistics from the bureau of labor statistics, to preclude testimony re speculative prospective economic relationship, and to preclude plaintiff's lay opinion on amount of lost profits.

"This confirmed that Mr. Reilly had disregarded his duty of good faith and fair dealings, had never actually intended to facilitate a settlement, and instead had succeeded to mislead Ms. Weathers to deny her access to justice. To prove his bad faith, Mr. Reilly was previously found by the Discovery Facilitator – Mr. Edward Ginn – to be sanctionable for engaging in abusive discovery against Ms. Weathers, and continuing at every step of the way to misrepresent the facts and subvert justice.

"In spite of the evidence on the record proving the lock out and court judgments, Mr. Reilly has denied every documented cause of action, and refused to provide discovery answers to even the most basic form

interrogatories, thereby denying disclosure of the actual employer of Ms. De Los Reyes and Ms. James, and delaying Ms. Weathers' opportunity to serve Clausen Law Group (the actual employer), under the Doctrine of Respondeat Superior.

"Once Ms. Weathers realized what was happening, being unable to afford an attorney for help/direction, and being overwhelmed by the weight of the judgment, Ms. Weathers immediately tried to ask the court for more time to respond to the motions filed based on her own excusable neglect under CCP 473, but she erroneously submitted form CM-020 EX PARTE APPLICATION FOR EXTENSION OF TIME, which was returned by the clerk, unfiled with a note explaining that the case is 'Done' **(1 CT pg. 034 and 5 CT, pg. 1232).**"

All this is most inappropriate.

We begin our demonstration of why against the background that Weathers has chosen to represent herself on appeal, as is her right. In doing so, however, she is held to the same standard as an attorney. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.) Self-representation is not a ground for lenient treatment, and "as is the case with attorneys, pro. per. litigants must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) In short, Weathers " 'is entitled . . . to no greater[ ] consideration than other litigants and attorneys [citations][, but] is held to the same restrictive rules of procedure as an attorney [citation].' " (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1444.)

California Rules of Court, rule 8.204(a)(2)(C) provides that an appellant's opening brief shall "[p]rovide a summary of the significant facts . . . ." And the leading California appellate practice guide instructs about this: "Before addressing the legal issues, your brief should accurately

and fairly state the critical facts (including the evidence), free of bias; and likewise as to the applicable law.  [Citation.]  [¶]  Misstatements, misrepresentations,  and/or material omissions of the relevant facts or law can instantly 'undo' an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case."  (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2022) ¶ 9:27, italics omitted.)

Not only does Weathers's brief not measure up, it also violates several principles of appellate advocacy and California Rules of Court.  For example, rule 8.204(a)(1)(C) requires any reference to a matter in the record, whether factual or procedural, be supported by a citation to the volume and page number of the record where the matter appears.  (*Professional  Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970; *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.)  Weathers's brief contains numerous claimed facts with no citation to the record.

Finally, Weathers's argument ends with several pages setting forth the elements of her various causes of action, with brief argument as to why they were demonstrated here.  Such argument disregards all principles of appellate advocacy, being little more than a setting forth of various principles of summary judgment law, without any attempt to demonstrate how those principles pertain here.

This too, in manifestly insufficient, as also pointed out by Eisenberg, who addressing the subject of argument in the "discussion" section of an appellant's opening brief, says this:

9

"[9:148] **Discussion:** The discussion portion of the brief sets forth the applicable law, applies the law to the facts of the case, and argues for the desired disposition.

"[9:149] **PRACTICE POINTER:** The discussion section is fundamental to persuading the court to rule in your client's favor . . . .  Thus, your arguments should be thoughtfully developed with sound *reasons* for the holding you desire.  Support your arguments with applicable legal authority (cases and statutes) *as well as logic*.

". . . [9:150]  **Use of Headings:** [California Rules of Court, rule] 8.204(a)(1)(B) requires each 'point' in a brief to appear 'under a separate heading or subheading summarizing the point . . . .'  Thus, each issue should be addressed *independently* under a *separate heading* in the discussion section (¶ 9:91).  Failure to do so may result in a *waiver* of the argument. (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [forfeiture of argument made only in footnote and not clearly set out with heading]; *Provost v. Regents of Univ. of Calif.* (2011) 201 Cal.App.4th 1289, 1294 ['we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument']; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114 ['there is no separate argument heading or analysis of the issues.  That alone is grounds to deem the argument waived'].)"  (Eisenberg, *supra*, Civil Appeals and Writs ¶¶ 9:148 to 9:150.) Weathers's brief has no argument headings and no real argument.

Beyond all that, Weathers's brief makes unfounded assertions such as this: "In fact, Attorney Davis Reilly actually used his position of trust as an officer of the court to mislead the court, misrepresent material facts, and make false statements in support of the motion, even though the record

10

contains evidence proving the truth of each allegation. Even though Appellant's excusable neglect, error or mistake resulted in her failure to oppose the motion for summary judgment, the court should have and has (in the past) reviewed the court record for both sides of an unopposed Motion for Summary Judgment, but in this case the court indicated that it reviewed only the record for the moving party.

"That court's review was inadequate in that it did not question or even acknowledge inconsistencies and failures in the documentation presented by Appellees. Had the court conducted a strict review of the record, and scrutinized the unsupported and misrepresented facts offered by Appellees' Motion for Summary Judgment, the court would have seen evidence proving the causes claimed by Ms. Weathers, and evidence of the fraud being perpetrated upon the court."

Numerous cases recognize the serious consequences that can result from such disregard of the rules, to the point where the court can strike portions of the brief. (See *C.J.A. Corp. v. Trans-Action Fin. Corp.* (2001) 86 Cal.App.4th 664, 673; *Ojavan Investors v. Cal. Coastal Com.* (1997) 54 Cal.App.4th 373, 391.)

We choose not to do so here, but rather will address Weathers's appeal on the merits in light of the applicable law.

**Summary Judgment and the Standard of Review**

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a)(1) (Section 437c).) And summary judgment will be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Section 437c, subd. (c).)

11

A defendant "moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  And to prevail, a defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to it. (*Aguilar, supra,* 25 Cal.4th at p. 849; *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477.)

We review a "grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.  [Citations.]" (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)  Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims.  (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.)  As we put it in *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320:  "[W]e exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action was without merit." (Accord, *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)[4]

---

[4] One of Weathers's general observations, albeit unsupported, about how we review the evidence is correct:  "[w]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67), and " 'view the evidence in the light most favorable to plaintiff[] as the losing part[y],' " (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 254.)  Here, however, there is no such evidence.

In addition to the above is the well-recognized admonition, set forth, for example, in *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 this way: "On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1140.) . . . '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)"

Here, Weathers has not even attempted to meet the requirement set forth in cases such as *Claudio*. Nor could she, as Judge Fannin got it right, where, having "independently reviewed defendants' opening papers," she was "satisfied that defendants' evidence adequately negates one or more elements of each of plaintiff's causes of action, and therefore that summary judgment is appropriate."

As quoted above, at one point in her argument Weathers asserts "That court's review was inadequate in that it did not question or even acknowledge inconsistencies and failures in the documentation presented by Appellees. Had the court conducted a strict review of the record, and scrutinized the unsupported and misrepresented facts offered by Appellees' Motion for Summary Judgment, the court would have seen evidence proving the causes claimed by Ms. Weathers, and evidence of the fraud being perpetrated upon the court."

Such an attack on Judge Fannin is manifestly unsupported, especially in light of the principle that a trial court is presumed to have understood and followed the applicable law. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["[W]e apply the general rule 'that a trial court is presumed to have been aware of and followed the applicable law' "]; *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103 ["We presume the trial court knew and properly applied the law absent evidence to the contrary"]; *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 741 [" 'It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties' "].) As Evidence Code section 664 succinctly states it, "It is presumed that official duty had been regularly performed."

But beyond that, as Judge Fannin indicated, she reviewed each motion on a cause of action by cause of action basis, and concluded that the defendants' evidence negated one or more elements of each of Weathers's causes of action.

**The Appeal Has No Merit**

We too have reviewed each respondents' motion, and agree with the conclusion reached by Judge Fannin: none of the causes of action had merit. Specifically:

**Interference**

A cause of action for tortious interference with prospective economic advantage requires a plaintiff to prove five elements: (1) an economic relationship between plaintiff and some third party, with the probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts on the part of defendant designed to disrupt

14

the relationship; (4) actual disruption of the relationship; and (5) economic harm to plaintiff proximately caused by the acts of defendant. (*Youst v. Longo* (1987) 43 Cal.3d 64, 71, fn. 6; CACI No. 2202.)

The first element is "an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 330; *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1168.) And the "intent" element requires, at minimum, that plaintiff prove that "the defendant knew that the interference was certain or substantially certain to occur as a result of its action." (*Korea Supply Co. v. Lockheed Martin Corp.*, *supra*, 29 Cal.4th at p. 1154; *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393 ["[A] plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant . . . knowingly interfered with the plaintiff's expectancy"].)

As shown by each defendant's moving papers, Weathers's responses to written discovery demonstrated she did not contend that respondents intentionally interfered with a contract between her and a third person; did not contend that respondents' conduct made performance of the contract between her and a third party more expensive or difficult; did not contend respondents intended to disrupt the performance of a contract between her and a third party; and did not contend respondents knew that disruption of performance of a contract between her and a third party was certain or substantially certain to occur when respondents acted.

Each of the motions also cited to, and quoted from, Weathers's testimony at deposition, where she also admitted many facts that defeated her interference claim, including that Weathers was not alleging that any

specific contract had been intentionally interfered with. Moreover, Weathers was not able to identify a specific economic relationship or client that Rock Creek Ventures, Clausen, De Los Reyes, or James knew about. Finally, Weathers confirmed that the only evidence she had of anyone's disruption to any business relationship is her allegation that she was locked her out of her office.

### Breach of Contract

The essential elements of a breach of contract claim are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. (*Reichert v. General Ins. Co. of America* (1968) 68 Cal.2d 822, 830; *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; CACI No. 303.)

Weathers admitted she never entered a contract with Clausen, and thus it is undisputed that the only contract was with Rock Creek Ventures, as evidenced by the lease agreement between Weathers and it. And as to it, Weathers admitted she did not pay rent between August 2015 and July 2016. Thus, Weathers's claim for breach of contract fails to meet the first element as to Clausen, as well as element two as to Rock Creek Ventures, as there is evidence of Weathers's nonperformance of the contract as evidenced by her admission that she was in default of the required rent payments.

### Fraud

The necessary elements to prove fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure), (2) knowledge of falsity (scienter), (3) intent to defraud (i.e., to induce reliance), (4) justifiable reliance, and (5) damages. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1108, superseded by statute on other grounds as stated in *Aguilar, supra,*

16

25 Cal.4th at p. 853, fn. 19; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; Civ. Code, §§ 1709, 1710, subd. (3).)

With regard to her cause of action for fraud, Weathers's complaint alleged, inter alia:

"Plaintiff alleges that this 3rd Unlawful Detainer action, brought under the name of Brickyard Cove Marina, LLC, was invalid, as Brickyard Cove Marina, LLC does not exist, and therefore has no standing to sue. Even so, Defendants did successfully perpetrate this fraudulent case; force Plaintiff to vacate (contrary to the law); defraud the court; and knowingly continue the illegal eviction which they started in 2015; while also disguising Clausen family involvement. [¶] Plaintiff has suffered immensely as a result of the aforementioned misrepresentation, deceit, and concealment of material facts."

Then, at her deposition, Weathers was asked to clarify her cause of action for fraud and testified:

"Q. . . . So, when you say they concealed facts, what you are saying is, it's because the representation that they made to you was not true and they concealed the fact that it was a lie, is that right?

"A. Yes. [¶] . . . [¶]

"Q. Did Ronald Clausen personally make any sort of false misrepresentation to you?

"A. That is part of the conspiracy that is not required for him to say anything to me.

"Q. Okay. Fair enough. And I'm not arguing . . . .

"A. Ronald Clausen didn't say anything to me.

"Q. That's all I'm asking. [¶] . . . [¶]

"Q. Did Rock Creek Ventures, LLC make a false representation to you?

17

"A. Indirectly—by—I'm assuming that Rock Creek Ventures had to have this relationship with Brickyard Cove in order for them to even know my information to send me this letter saying that ownership had changed and they were my new landlord."

As admitted by Weathers at deposition, her allegation with regard to her cause of action for fraud was that the representation her landlord changed from Rock Creek Ventures, LLC to Brickyard Cove Marina was false. The evidence was dispositive against this, as in September 2016, Rock Creek Ventures, LLC sold the property to Cove Investments. But beyond the fact that the sale did occur, Weathers acknowledged at deposition that no defendant ever made any misrepresentation to her.

**Defamation**

In order to prove defamation, Weathers must demonstrate a false and unprivileged statement of a defamatory nature was (1) published to a third person that either (a) charged Weathers with a crime or (b) tended directly to injure her in respect to her business and, (2) that said statement cause Weathers to suffer actual damage. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; Civ. Code, §§ 44, 46.)

Weathers's response to Amended Special Interrogatory No. 48 made clear that the alleged defamatory statement was the July 8, 2016 notice sent to her regarding her defaulted rent payments for the leased space. However, at deposition Weathers acknowledged that the statements made in the July 8, 2016 notice were true.

Moreover, Defendant's Amended Special Interrogatory, Set One, No. 48, asked, "If you contend you suffered harm to your reputation as a result of Defendant's alleged defamatory statement(s), state all facts that support your contention." Weathers responded to Amended Special

18

Interrogatory No. 48 in full, "Plaintiff believes that the false statement caused said harm."

### Intentional Infliction of Emotional Distress

To establish the tort of intentional infliction of emotional distress, a plaintiff must prove: " ' " '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . . ' " ' " (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.) "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez v. J.C. Penney Co., Inc.* (1979) 24 Cal.3d 579, 593, superseded by statute on other grounds as stated in *Melendez v. City of Los Angeles* (1998) 63 Cal.App.4th 1, 6–8, 12.)

Weathers's intentional infliction of emotional distress claim fails because she cannot show that defendant's engaged in "extreme or outrageous" conduct. Weathers's allegations of emotional distress derive from the central allegation that she was illegally locked out of her leased space and suffered economic damage as a result. Once again, the evidence is contrary. To begin with, due to a security breach at the property, the locks on all the offices were changed. Weathers was given the opportunity to get a new key, but failed to do so. Moreover, Weathers has not produced any evidence that Defendant's alleged lock out caused her to suffer any damage. Rather, as Weathers admitted at deposition, defendant's actions were simply to legally recover possession of the leased space. In the end, all that Rock Creek Ventures did was take action to legally recover possession of the leased

space from Weathers as a result of her admitted default of the rental agreement.

**Conspiracy**

No cause of action for conspiracy exists unless the pleaded facts show some wrongful act that would support a cause of action without the conspiracy. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1019.) In other words, there can be no conspiracy without an underlying tort: " 'The basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.' [Citation.] The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. [Citations.] [¶] However, actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission." (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582.)

Here, there is neither an underlying tort nor a "meeting of the minds" to support any cause of action for conspiracy. And with regard to the allegation of an illegal lockout, Weathers admitted at deposition that defendant's actions were simply to legally recover possession of the leased space.

**Conversion**

California courts generally identify three elements required to establish a cause of action for conversion: (1) the plaintiff's ownership right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and

20

(3) damages.  (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395; see generally CACI No. 2100.)

Here, Weathers has failed to establish any conversion by any wrongful act or any damage.  Weathers was given more than one opportunity to retrieve any personal property at the leased space but failed to do so.

**Abuse of Process**

A cause of action for abuse of process has two essential elements: "(1) defendant [has] an ulterior motive in using the process and (2) committed a willful act in a wrongful manner."  (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792; see CACI No. 1520.)  As explained by one Court of Appeal, " 'The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed.  [Citations.]' "  (*S.A v. Maiden* (2014) 229 Cal.App.4th 27, 41.)  And the mere filing and maintenance of an action alone does not constitute an abuse of process.  (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168.)

Here, the sole basis for Weathers's abuse of process claim is the allegation that Rock Creek Ventures, LLC filed an unlawful detainer action against her, which Weathers admitted was filed to legally procure possession of the premises.  This has nothing to do with process, let alone shows an ulterior motive.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

_____
Richman, Acting P.J.

We concur:


_____
Miller, J.


_____
Markman, J. *




*Weathers v. Clausen* (A163208)


    **\*Superior** Court of Alameda County, Judge Michael Markman, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.