[No. C039919. Third Dist. June 24, 2003.]

TIMOTHY HOBLITZELL, Plaintiff and Appellant, v.
CITY OF IONE, Defendant and Respondent.

**COUNSEL**

Law Offices of Kenneth Foley and Kenneth M. Foley for Plaintiff and Appellant.

Barkett, Gumpert & Reiner and Franklin G. Gumpert for Defendant and Respondent.

**OPINION**

**KOLKEY, J.**—Timothy Hoblitzell (plaintiff) appeals from a summary judgment in favor of the City of Ione (City) on plaintiff's claim that the City was vicariously liable for the allegedly tortious conduct of two of its employees.

 This appeal requires us to decide whether public employees who commit tortious acts while acting outside their employer's jurisdiction,

outside of their official duties, and for personal reasons may nonetheless be deemed to be acting within the scope of their employment. We conclude that they are not and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Plaintiff's Action

In his complaint, the plaintiff, who was a contractor at a construction site, claimed that on November 3, 1999, at the request of a disgruntled former employee (defendant Jim Brown), defendants Jeff Barnhart and Don Myshrall—a law enforcement officer and a building inspector, respectively, employed by the City—came to the job site in an unmarked vehicle, identified themselves as building inspectors, and told the property owner that plaintiff had been performing the construction without permits and that the site should be shut down.[1] They also made disparaging remarks about the quality of plaintiff's work and had a heated verbal argument with plaintiff that led to defendant Brown poking plaintiff in the chest. As a result of defendants' conduct, plaintiff's work on the site was delayed for three days while he arranged for county building inspectors to come to the site to assure the property owner that permits were not required.

Plaintiff alleged intentional interference with prospective economic advantage, intentional infliction of emotional distress, and negligence against all of the individual defendants Brown, Barnhart, and Myshrall. He also alleged assault and battery against defendants Brown and Barnhart. Finally, he alleged, on the basis of respondeat superior, that the defendant City was liable for its employees' negligence, intentional interference with prospective economic advantage, assault, and battery.

### II. The City's Motion for Summary Judgment

The City moved for summary judgment on the ground that the actions of Barnhart and Myshrall were outside the scope of their employment with the City.[2] The City's evidence showed that the construction site was located in an unincorporated area of Amador County, outside the City's jurisdiction, and that plaintiff knew this; that neither Barnhart nor Myshrall told plaintiff that they were present on official business; that Barnhart and Myshrall drove to the project at the request of Brown (plaintiff's disgruntled former employee) while they were off duty; that Barnhart was dressed in plain clothes, did not carry a gun, baton, or other weapon, and never identified himself as a police

---

[1] Although the three individual defendants were named in plaintiff's complaint, they are not parties to this appeal.

[2] The parties do not dispute that Brown was not an employee of the City.

officer; and that neither Barnhart nor Myshrall informed plaintiff that he would be arrested or cited for a violation of any of the City's ordinances.

### III. Plaintiff's Opposition to the Motion

Plaintiff admitted the following facts, either in his opposition or in his deposition: that he was aware that the construction site was located in an unincorporated area of Amador County and that the City had no jurisdiction over the project; that he was aware, owing to his work in the construction business, that construction permits for a project had to be obtained from a county or municipality depending upon where the project was located; that neither Barnhart nor Myshrall said that they were there on official business; that Barnhart was not wearing a police uniform or badge and did not mention that he was a law enforcement officer; that plaintiff thought Myshrall and Barnhart were imposters; and that plaintiff was never cited or given a notice of a violation.

But plaintiff presented the following evidence in support of his claim that Barnhart and Myshrall were acting within the scope of their employment: that the two men identified themselves as building inspectors, telling the property owner that the job was not permitted and should be shut down; that both traveled in a white, unmarked car with red and blue lights in the windshield and California exempt license plates; that they were wearing civilian clothes, although Barnhart appeared to have a holster underneath his jacket; that Myshrall told plaintiff that he was a building inspector from Ione, inspected a retaining wall, and gave his opinion that a permit would be required; that Barnhart had contracted to build a set of stairs at the project and had asked Myshrall to give his opinion on the quality of the landing on which the stairs were to be built; and that Myshrall did not have any written documentation that showed that he had taken time off from work at the time of the incident.

### IV. The Court's Order Granting the City's Motion

The court granted summary judgment in favor of the City by an order that states in pertinent part: "[T]he act of a building inspector going to a job site that is outside of the [C]ity's jurisdictional limits and threatening to shut the job down is not the type of risk that Ione should bear as a cost of doing business. (*Thorn v. City of Glendale* (1994) 28 Cal.App.4th 1379, 1383 [35 Cal.Rptr.2d 1].) Likewise, a city is not vicariously responsible for the intentional conduct of an off-duty police officer such as B[arnhart]. (*Melendez v. City of Los Angeles* (1998) 63 Cal.App.4th 1, 14 [73 Cal.Rptr.2d 469].)"

Judgment was thereafter entered in the City's favor, and plaintiff appeals.[3]

## DISCUSSION

### THE SUMMARY JUDGMENT MOTION WAS PROPERLY GRANTED

#### I. STANDARD OF REVIEW

"[G]enerally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Ibid.*)

"On appeal, we review the record de novo to determine whether the moving party met its burden of proof." [Citations.] (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116 [113 Cal.Rptr.2d 90].) We consider " 'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.' [Citation.]" (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313], bracketed text in *Artiglio*.)

#### II. THE RESPONDEAT SUPERIOR DOCTRINE

Plaintiff contends that there was a triable issue of material fact "as to whether ... Myshrall and ... Barnhart were acting in the course and scope of their employment for the City ... " so as to make the City liable under the doctrine of respondeat superior.

"The doctrine of respondeat superior applies to public and private employers alike." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 209 [285 Cal.Rptr. 99, 814 P.2d 1341] (*Mary M.*).)

Government Code section 815.2, subdivision (a), provides: "A public entity is liable for injury proximately caused by an act or omission of an employee

---

[3] The City challenges the appealability of the summary judgment order, but since plaintiff timely filed an amended notice of appeal following the notice of entry of judgment, the appeal is properly taken. (Cal. Rules of Court, rules 1, 2(a).)

of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

"By this language, the Legislature incorporated 'general standards of tort liability as the primary basis for respondeat superior liability of public entities ....' [Citation.] Courts have construed the term 'scope of employment' in section 815.2 as broadly as in private tort litigation. [Citations.]" (*Mary M., supra,* 54 Cal.3d at pp. 209–210.)

"Respondeat superior is based on ' "a deeply rooted sentiment" ' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities. [Citations.]" (*Mary M., supra,* 54 Cal.3d at p. 208.) "In *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962 [227 Cal.Rptr. 106, 719 P.2d 676] (*Perez*), [the California Supreme Court] explained the scope of employment principles under the respondeat superior doctrine as follows: '[A]n employer is liable for risks "arising out of the employment." [Citations.] [¶] A risk arises out of the employment when "*in the context of the particular enterprise* an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' *to the enterprise undertaken by the employer.* [Citation.]" [Citation.] Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include *risks inherent in or created by the enterprise.*' [Citation.] These principles were reiterated in *Mary M., supra,* 54 Cal.3d at page 209." (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003 [47 Cal.Rptr.2d 478, 906 P.2d 440].)

"Notwithstanding the generally broad view given to scope of employment determinations, the law is clear that an employer is not strictly liable for all actions of its employees during working hours. Significantly, an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes. [Citations.] Thus, if the employee 'inflicts an injury out of personal malice, not engendered by the employment' [citation] or acts out of 'personal malice unconnected with the employment' [citation], or if the misconduct is not an 'outgrowth' of the employment [citation], the employee is not acting within the scope of employment. Stated another way, '[i]f an

employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.' [Citation.] In such cases, the losses do not foreseeably result from the conduct of the employer's enterprise and so are not fairly attributable to the employer as a cost of doing business." (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at pp. 1004–1005.)

For instance, "[the] cases hold that, except where sexual misconduct by on-duty police officers against members of the public is involved (e.g., *Mary M., supra,* 54 Cal.3d 202; *White v. County of Orange* (1985) 166 Cal.App.3d 566 [212 Cal.Rptr. 493]), the employer is not vicariously liable to [a] third party for [sexual] misconduct. [Citations.]" (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at pp. 1006–1007.) "In those decisions, vicarious liability was rejected as a matter of law because it could not be demonstrated that the various acts of sexual misconduct arose from the conduct of the respective enterprises" since "the acts had been undertaken solely for the employees' personal gratification and had no purpose connected to the employment" and "had not been engendered by events or conditions relating to any employment duties or tasks ...." (*Id.* at p. 1007.)

Likewise, a nonsexual assault which was not committed to further the employer's interests and arose from a personal dispute, such as an assault by an on-duty bartender in the course of a dispute with his common law wife (*Monty v. Orlandi* (1959) 169 Cal.App.2d 620, 624 [337 P.2d 861]), or an arson which was committed by a fire marshal out of personal compulsion during a fire inspection (*Thorn v. City of Glendale, supra,* 28 Cal.App.4th at p. 1383), do not constitute a basis for vicarious liability against the employer. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 301 [48 Cal.Rptr.2d 510, 907 P.2d 358].)

## III. APPLICATION

In this case, plaintiff contends that there is a triable issue of material fact whether Myshrall and Barnhart were acting within the course and scope of their employment with the City based on the following facts: both men stated that they were "from Ione"; Myshrall, acting as a building inspector, gave an opinion on plaintiff's workmanship; defendants had driven to the project site during normal working hours; and the City had not proffered any evidence defining or limiting defendants' authority to act on behalf of the City.

In his reply, however, plaintiff concedes that "it does not appear that Officer Barnhart was acting in the course and scope of his employment."

Nonetheless, he insists that the City "is responsible for the conduct of Inspector Myshrall because Inspector Myshrall had been employed to inspect buildings for the City of Ione and was apparently given a vehicle for that purpose and, on the day in question, was acting as a building inspector using a City vehicle during the normal business hours of his employment."

But as mentioned, "the law is clear that an employer is not strictly liable for all actions of its employees during working hours. Significantly, an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes." (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at pp. 1004–1005.)

Here, it is undisputed that Myshrall and Barnhart were acting outside the City's jurisdiction, that they were wearing civilian clothing, and that they were acting for personal reasons—whether we credit the City's version that they were acting at the request of defendant Brown (plaintiff's disgruntled former employee) or plaintiff's version that Myshrall acted at the request of defendant Barnhart (who had contracted to build a set of stairs at the project and wanted Myshrall's opinion). Clearly, both Myshrall and Barnhart substantially deviated from their employment duties for the City when they acted outside the City's jurisdiction, outside their employment, and for personal reasons.

As stated by the Supreme Court in *Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at page 1006, "vicarious liability is deemed inappropriate where the misconduct does not arise from the conduct of the employer's enterprise but instead arises out of a personal dispute [citation], or is the result of personal compulsion [citation]. In such cases, the risks are engendered by events unrelated to the employment, so the mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable. [Citation.]"

Thus, it makes no difference that Myshrall identified himself as a building inspector from Ione or used an unmarked City car: The purported misconduct did not arise from the employer's enterprise but arose for personal reasons. "While the employee ... need not have intended to further the employer's interests, the employer will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 297.) And "[a]n act serving only the employee's personal interest is less

likely to arise from or be engendered by the employment than an act that, even if misguided, was intended to serve the employer in some way." (*Id.* at p. 298.) "Respondeat superior liability should apply only to the types of injuries that ' "as a practical matter are sure to occur in the conduct of the employer's enterprise." ' [Citation.]" (*Id.* at p. 299.)

As our state Supreme Court has repeatedly reiterated, " ' " the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' *to the enterprise undertaken by the employer.* [Citation.]" [Citation.]' " (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at p. 1003; *Mary M., supra,* 54 Cal.3d at p. 209.) ▉ Here, the defendants' alleged misconduct *outside* the City's jurisdictional limits and thus *outside* their authority and for their personal purposes cannot be regarded as typical of or broadly incidental to the City's business.

Plaintiff nonetheless argues that *Mary M., supra,* 54 Cal.3d 202, is controlling, and supports the application of respondeat superior liability here. In *Mary M.,* Sergeant Schroyer of the Los Angeles Police Department detained a female driver for erratic driving. (*Id.* at p. 207, 285 Cal.Rptr. 99, 814 P.2d 1341 ) The detention occurred at 2:30 a.m.; the sergeant was in uniform; he wore a badge and had a gun; and he was driving a marked black-and-white police car—all unlike this case. After the suspect fared poorly on field sobriety tests, she asked not to be taken to jail. Schroyer appeared to comply and drove the suspect to her residence, but there he demanded "payment" for his forbearance and raped her. The jury returned a liability verdict against the City of Los Angeles, finding that the officer was acting within the course and scope of his employment. The Supreme Court upheld this determination.

Our state high court wrote: "At the outset, we observed that society has granted police officers extraordinary power and authority over its citizenry. An officer who detains an individual is acting as the official representative of the state, with all of its coercive power. As visible symbols of that power, an officer is given a distinctively marked car, a uniform, a badge, and a gun." (*Mary M., supra,* 54 Cal.3d at p. 216.) The Court then found that "[i]n view of the considerable power and authority that police officers possess, it is neither startling nor unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct. The precise circumstances of the assault need not be anticipated, so long as the risk is one that is reasonably foreseeable." (*Id.* at pp. 217–218.) It concluded: "[W]e hold that when, as in this case, a police officer on duty misuses his official authority by raping a woman whom he has detained, the public entity that employs him can be held

vicariously liable. This does not mean that, as a matter of law, the public employer is vicariously liable whenever an on-duty officer commits a sexual assault. Rather, this is a question of fact for the jury. In this case, plaintiff presented evidence that would support the conclusion that the rape arose from misuse of official authority. Sergeant Schroyer detained plaintiff when he was on duty, in uniform, and armed. He accomplished the detention by activating the red lights on his patrol car. Taking advantage of his authority and control as a law enforcement officer, he ordered plaintiff into his car and transported her to her home, where he threw her on a couch. When plaintiff screamed, Sergeant Schroyer again resorted to his authority and control as a police officer by threatening to take her to jail. Based on these facts, the jury could reasonably conclude that Sergeant Schroyer was acting in the course of his employment when he sexually assaulted plaintiff." (*Id.* at p. 221, fn. omitted.)

In contrast, in this case, the police officer—Barnhart—was not in uniform or on duty, but in civilian clothes. He did not use his official authority in any fashion but claimed to be a building inspector from the City. Therefore, he was not acting within the scope of his employment, as plaintiff virtually concedes in his reply.

Moreover, since *Mary M.,* the courts have restricted that decision to wrongful acts by on-duty police officers. (E.g., *Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 304; *Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at p. 1006; *White v. County of Orange, supra,* 166 Cal.App.3d 566; see also *Doe 1 v. City of Murrieta* (2002) 102 Cal.App.4th 899, 909 [126 Cal.Rptr.2d 213].) Thus, it does not apply to Myshrall's actions.

Indeed, since *Mary M.,* the California Supreme Court has concluded that a hospital was not vicariously liable as a matter of law for a technician's sexual assault of a patient while conducting an ultrasound imaging examination in the course of his employment. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 294.) The high court distinguished *Mary M.* on the ground that its conclusion there expressly " 'flow[ed] from the unique authority vested in police officers.' " (*Id.* at p. 304.)

Likewise, our high court ruled that a county need not indemnify one of its deputy sheriffs against a sexual harassment lawsuit arising from his actions toward other deputy sheriffs at a county jail because such acts did not occur within the scope of his employment: "[T]he deliberate targeting of an individual employee by another employee for inappropriate touching and requests for sexual favors is not a risk that may fairly be regarded as typical

of or broadly incidental to the operation of a county jail." (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at p. 997.) The court in that case observed that "*Mary M.* distinguished but did not purport to overrule previous cases rejecting the application of respondeat superior for misconduct occurring in relationships of a hierarchical nature where, at least in the eyes of the victim, the wrongdoer's authority might be considered very great." (*Id.* at p. 1013.)

Further, several justices of the high court have concluded that *Mary M.* itself was wrongly decided. (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at p. 1020 (conc. opn. of Baxter, J.); *id.* at pp. 1020–1023 (conc. opn. of George, J., joined by Lucas, C. J.).)

 Thus, we conclude that the exceptional application of the respondeat superior doctrine created by *Mary M.* does not apply to Myshrall's actions as a building inspector acting outside of his jurisdiction nor to Barnhart's action as an off-duty officer posing as a building inspector.

 Finally, we note that in reaching its conclusions on vicarious liability, the Supreme Court has also "consulted the three identified policy goals of the respondeat superior doctrine—preventing future injuries, assuring compensation to victims, and spreading the losses caused by an enterprise equitably—for additional guidance as to whether the doctrine *should* be applied ...." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 304, citing *Mary M., supra,* 54 Cal.3d at pp. 209, 214–217, and *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 451–452 [256 Cal.Rptr. 766, 769 P.2d 948].)

Those policy goals do not support the imposition of vicarious liability here. First, the imposition of vicarious liability is not necessary to prevent future injuries. If plaintiff is right and defendants improperly sought to shut down a project outside their jurisdiction, such activity is unusual and surely unlikely to repeat itself. Further, other measures, including employment actions, are sufficient to avoid the risk of future injuries. The availability of alternative measures for preventing future injuries has been considered a reason for denying the imposition of vicarious liability. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at pp. 304–305.)

On the other hand, the imposition of vicarious liability here could lead to the adoption of precautionary measures that would not have a beneficial effect. For instance, the City might prohibit any communication of safety concerns over structures outside the City's jurisdiction to avoid the risk of

vicarious liability. But this would not serve the public interest in safety. Adverse consequences from the imposition of vicarious liability have also been held to argue against its imposition. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 304.)

Turning to the second policy goal—assuring compensation to victims—there can be no dispute that the imposition of vicarious liability would help compensate the plaintiff and other contractors. But as a contractor, the plaintiff has other means, including contractual means, to compensate himself for delays outside his control. Thus, we can draw no firm direction from the consideration of this policy.

█ Finally, the third policy goal—spreading the losses caused by an enterprise equitably—does not favor the imposition of vicarious liability. This policy asks whether the employee's conduct was " 'so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 305.) In fact, this formula for determining the propriety of the policy of spreading the losses caused by an enterprise is one of the tests for determining whether the respondeat superior doctrine should be applied. (*Farmers Ins. Group v. County of Santa Clara, supra,* 11 Cal.4th at p. 1003.) The Supreme Court has called that formulation just another way of inquiring into whether the risk is one that may fairly be regarded as typical of, or broadly incidental to, the enterprise undertaken by the employer. (*Ibid.*) Accordingly, for the reasons already discussed, we find that Myshrall's and Barnhart's purported torts—which arose outside the public entity's jurisdiction and were motivated by personal reasons—are not risks typical of, or broadly incidental to, the public entity's employment. They are not "predictably created by or fairly attributed to the nature of the [City's] employment." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* 12 Cal.4th at p. 305.)

Instead, "in view of the exceedingly high cost of modern litigation, from the point of view of a defendant public entity, merely being named in a tort suit places it in a lose/lose situation. Except in those most rare instances permitting the recovery of attorney fees, the more procedural stages through which it must pass prior to vindication, the greater will be its 'victorious losses.' This problem is particularly acute for today's financially stressed governmental bodies." (*Thorn v. City of Glendale, supra,* 28 Cal.App.4th at p. 1385.) █ Thus, vicarious liability should not be imposed on a public entity for torts done by building inspectors (or employees posing as building inspectors) for personal reasons *outside* the public entity's jurisdiction.

## DISPOSITION

The judgment is affirmed. Defendant City shall recover its costs on appeal. (Cal. Rules of Court, rule 27(a).)

Blease, Acting P. J., and Nicholson, J., concurred.

On July 14, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 24, 2003.