Filed 11/25/24

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ANTONIO JUAREZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT, <br><br> Defendant and Respondent. | D084517 <br><br><br> (Super. Ct. No. CVRI2203422) |

APPEAL from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge. Reversed and remanded with directions.

Olivo & Associates and Eduardo Olivo for Plaintiffs and Appellants.

Cummings, McClorey, Davis, Acho & Associates, Ryan D. Miller, and Daniel Ferris for Defendant and Respondent.

Plaintiffs Antonio Juarez, Jose Hinojosa, Jose Espinosa, and Maria Morfin (plaintiffs) appeal from the trial court's judgment of dismissal following an order sustaining defendant San Bernardino City Unified School District's (District) demurrer to plaintiffs' second amended complaint,

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II and III.

without leave to amend. This action arises from an encounter between plaintiffs and Officer Alejandro Brown, then a District employee, which resulted in Officer Brown pleading guilty to assault and battery of Juarez and threatening the other plaintiffs under color of law. In this ensuing civil action, the trial court sustained the District's demurrer on the basis that the complaint failed to allege sufficient facts to establish that Officer Brown was acting within the course and scope of his employment with the District.

We reverse and remand for further proceedings. Based on the specific facts pled in the complaint, scope of employment is a factual issue that cannot be resolved as a matter of law on demurrer. Taking these allegations as true, Officer Brown's off-duty misconduct while investigating a suspected theft of his cell phone and wielding his authority as a peace officer for the District may fairly be regarded as an outgrowth of his employment—and is not so unusual or startling that it would seem unfair to expose the District to liability.

FACTUAL AND PROCEDURAL BACKGROUND

We derive our facts from those properly pled in plaintiffs' second amended complaint. (See *Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [we "treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law"].)

*A. The Cell Phone Incident*

In February 2018, Juarez found a cell phone on the ground in Cherry Valley, California, located in Riverside County. Juarez placed it in his truck. Later that afternoon, when Juarez and the other plaintiffs were outside of Hinojosa's home in nearby Beaumont, California, Officer Brown approached them after tracking his cell phone to their location.

2

Officer Brown, who was employed by the District as a police officer at the time, was carrying his firearm and had his District police badge clipped to his belt. He immediately identified himself as a police officer for the District, displayed his badge to plaintiffs, and demanded that they comply with his commands. Officer Brown then pulled his firearm, cocked it, and aimed it at Juarez, Espinosa, and Hinojosa, while Morfin, Hinojosa's wife, watched from inside the house. Officer Brown demanded they turn over the cell phone and repeatedly asserted his authority as a police officer for the District. Juarez retrieved the phone from his truck and attempted to hand it to Officer Brown, but Officer Brown ordered Juarez to put the phone on the ground. As Juarez went to do so, Officer Brown struck Juarez in the face with his gun, causing Juarez to fall back, hit his head on the ground, and lose consciousness. Officer Brown then took pictures of plaintiffs and told them he knew who they were.

Officer Brown later pled guilty in San Bernardino County Superior Court to assault by a public officer (Pen. Code, § 149) and threatening the other plaintiffs under color of law, admitting that he acted under the color of authority as a District police officer when he detained plaintiffs and assaulted Juarez.

*B. The Second Amended Complaint and Demurrer*

After filing this lawsuit, plaintiffs filed a second amended complaint in August 2022 against Officer Brown and the District alleging the following causes of action: (1) negligence; (2) battery; (3) assault; (4) negligent hiring, supervision, and retention; (5) false arrest and false imprisonment; (6) intentional and negligent infliction of emotional distress; and (7) violation of Civil Code section 52.1 (the Bane Act).

3

The complaint asserted the District was liable under Government Code section 815.2, subdivision (a), which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." In support of that theory, the complaint alleged facts about the authority the District bestows on its employees as peace officers. For example, the complaint alleged that under Penal Code section 830.32,[1] the District advises its employee officers that their authority as peace officers extends to any place in California as to public offenses endangering persons or property. District officers are expected to exercise that authority as part of their "fundamental duty" to ensure the safety and security of life and property. Plaintiffs alleged that the

_____

[1] Penal Code section 830.32 provides, in relevant part, that school district police officers—whose primary duty is the enforcement of the law— "are peace officers whose authority extends to any place in the state for the purpose of performing their primary duty or when making an arrest pursuant to [Penal Code] Section 836 as to any public offense with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of that offense . . . ." (Pen. Code, § 830.32, subd. (a).)

Penal Code section 836 provides, in relevant part, that a peace officer "may arrest a person in obedience to a warrant, or, pursuant to the authority granted to him or her by [the chapter containing Penal Code section 830.32] without a warrant, may arrest a person whenever . . . [¶] (1) The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence. [¶] (2) The person arrested has committed a felony, although not in the officer's presence. [¶] (3) The officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed." (Pen. Code, § 836, subd. (a).)

4

District authorizes its police officers to use force to seize evidence and prevent its destruction, and that the District equips officers with firearms to carry in the performance of their duties—whether they are officially on duty or not. The District requires that its officers display their badges while "on duty or otherwise acting in an official or authorized capacity." The complaint further alleged the District instructs its officers that they are authorized to perform their duties at all hours of the day (except when making misdemeanor arrests) and that they are authorized to exercise their peace officer authority anywhere in the United States.

Regarding Officer Brown's encounter with plaintiffs, in addition to the facts described above, the complaint alleged that he was investigating the whereabouts of his cell phone when he approached plaintiffs. Juarez, Espinosa, and Hinojosa understood and believed that based on his representations, Officer Brown was exercising his authority as a police officer. The complaint alleged on information and belief that Officer Brown used his cell phone to "perform his job as a police officer for [the District] and that he sought to retrieve the cell phone" in order to perform his job. The complaint also asserted that Officer Brown thought Juarez had stolen his phone, that plaintiffs were in possession of stolen property, and that Officer Brown's investigation led him to plaintiffs' location.

The District filed a demurrer to the second amended complaint, which the trial court sustained without leave to amend. The court found that the complaint failed to allege sufficient facts to hold the District directly liable for Officer Brown's acts, and that it failed to sufficiently allege Officer Brown acted "within the course and scope of his employment to establish vicarious liability." The court further found that the complaint failed to sufficiently allege that Officer Brown was exercising arrest powers pursuant to Penal

5

Code section 836 at the time of the incident, and that the complaint failed to state a cause of action for negligent hiring, supervision, and retention. The court then dismissed the complaint as to the District and entered judgment in the District's favor.

DISCUSSION

I

Plaintiffs argue on appeal that the trial court erred by finding the complaint failed to allege sufficient facts to establish that Officer Brown was acting within the scope of his employment. We agree.

*A. Governing Law*

"To determine whether a demurrer was properly sustained, we review the allegations of the operative complaint for facts sufficient to state a claim for relief. In doing so, we treat the demurrer as admitting all material facts properly pleaded. ' "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 866 (*C.A.*).) We independently review the trial court's ruling and determine de novo whether the complaint alleges facts sufficient to state a cause of action. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) We also liberally construe the allegations with a view to substantial justice between the parties. (Code Civ. Proc., § 452.)

Under the doctrine of respondeat superior and Government Code section 815.2, a public entity employer may be held vicariously liable for torts committed by an employee within the scope of employment. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 (*Mary M.*).) " 'A risk arises out of the employment when "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the

6

loss resulting from it among other costs of the employer's business. [Citations.]  In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer.' " ' " (*Id.* at p. 209.)  "Tortious conduct that violates an employee's official duties or disregards the employer's express orders may nonetheless be within the scope of employment.  [Citations.]  So may acts that do not benefit the employer [citation], or are willful or malicious in nature [citations]." (*Ibid.*)

The scope of employment has been interpreted broadly in California under the respondeat superior doctrine.  (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 (*Farmers*).)  "For example, '[t]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer.'  [Citation.]  Thus, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal and not acts of service, do not take the employee outside the scope of employment."  (*Ibid.*)

Even so, "the law is clear that an employer is not strictly liable for all actions of its employees during working hours.  Significantly, an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee substantially deviates from the employment duties for personal purposes.  [Citations.]  Thus, if the employee 'inflicts an injury out of personal malice, not engendered by the employment' [citation] or acts out of 'personal malice unconnected with the employment' [citation], or if the misconduct is not an 'outgrowth' of the employment [citation], the employee

7

is not acting within the scope of employment." (*Farmers, supra*, 11 Cal.4th at pp. 1004–1005, italics omitted.)

"Where the facts of the case make it arguable whether the employee has acted within the scope of his employment, then the scope of employment issue is one properly decided by the trier of fact. However, where the facts would not support an inference that the employee acted within the scope of his employment and where there is no dispute over the relevant facts, the question becomes one of law." (*Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 138.)

*B. Analysis of Respondeat Superior Issue*

The District contends that Officer Brown's alleged acts were unconnected with his employment because he acted out of personal malice, he was outside of the District's jurisdiction, he was off duty, and his misconduct was "so unusual or startling that it would seem unfair" to expose the District to liability. We disagree with each of these points.

First, plaintiffs' allegations establish a connection between Officer Brown's duties as a District officer and his misconduct. The complaint alleged that as a District officer, Officer Brown had a duty to ensure the safety and security of students, staff, and *property*. And in service of that duty, the District authorized and equipped him to use force to seize evidence and prevent its destruction. Citing Penal Code section 830.32, the complaint alleged that Officer Brown had the authority to arrest someone if he had probable cause to believe they had committed a felony. The complaint further alleged that Officer Brown used his cell phone to "perform his job as a police officer" for the District, and that he sought to retrieve it "in order to be able to perform his job." Plaintiffs therefore asserted multiple plausible theories for how Officer Brown's search for the phone was connected to his

8

employment: as a way of ensuring the security of his property as a District employee, to recover a tool he needed to perform his duties, as an investigation of a potential violation of the law, and to seize evidence of a crime and prevent its destruction.

Although the District argues Officer Brown acted out of personal malice when he accosted plaintiffs, the complaint's allegations establish that his actions may not have been "strictly personal" because finding and retrieving his phone was not unrelated to his duties. (*Farmers, supra*, 11 Cal.4th at p. 1007.) While an employer may not face liability for an employee acting out of personal malice "*unconnected* with the employment," as noted, Officer Brown's acts as alleged in the complaint were an " 'outgrowth' of the employment." (*Id.* at p. 1005, italics added.) Because we interpret scope of employment broadly, even if Officer Brown was "not engaged in the ultimate object of his employment at the time of his wrongful act," that "does not preclude attribution of liability to an employer.' " (*Id.* at p. 1004.)

Moreover, a fact-finder could reasonably infer that retrieving what Officer Brown believed to be his stolen phone was an act "necessary to [his] comfort, convenience, health, and welfare . . . while at work," which would not take him outside the scope of employment. (*Farmers, supra*, 11 Cal.4th at p. 1004.) As the Supreme Court held in *Farmers*, " ' "where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer." ' " (*Ibid.*) Accepting the allegations as admitted, we cannot conclude that Officer Brown was neither directly nor indirectly serving the District by pursuing and retrieving what he believed to be stolen property,

9

which fell broadly within the ambit of his alleged duties and served the purpose of allowing him "to perform his job."

Second, we conclude that whether Officer Brown was in the District's jurisdiction when he committed the misconduct is not dispositive in analyzing whether he acted within the scope of employment. The complaint alleged that the District authorizes its officers to exercise their peace officer authority anywhere in the United States. The complaint also alleged that in accordance with Penal Code section 830.32, the District advises its employee officers that their authority as peace officers extends to any place in California for purposes of performing their primary duty. (Pen. Code, § 830.32, subd. (a).) As noted, plaintiffs claimed that Officer Brown's primary duties included ensuring the safety and security of property. His alleged investigation of a suspected property theft therefore " 'may fairly be regarded as typical of or broadly incidental' to the enterprise" of ensuring the security of property—an undertaking consistent with Penal Code section 830.32's geographic extension of his authority to anywhere in the state. (*Mary M., supra*, 54 Cal.3d at p. 209.)

Third, for related reasons, we conclude that whether Officer Brown was off duty when he committed misconduct is also not dispositive given the alleged breadth of his off-duty authority. Plaintiffs alleged that the District instructs its officers that they are authorized to perform their duties at all hours of the day, apart from misdemeanor arrests. The District allegedly requires that officers display their badges while "on duty *or otherwise* acting in an official *or authorized* capacity." (Italics added.) The complaint also alleged that, consistent with the broad authority granted to peace officers under the Penal Code, the District "authorizes its police officers to exercise

10

their authority" not only throughout the state, but also "while they are on-duty *or off-duty*[.]" (Italics added.)

Furthermore, the complaint cites Penal Code section 830.32, which in turn references Penal Code section 836, providing that a peace officer can conduct a warrantless arrest "*whenever*" there is probable cause to believe someone has committed a felony, "whether or not a felony, in fact, has been committed." (Pen. Code, § 836, subd. (a), italics added.) And notably, the complaint alleged that the District authorizes its officers to carry their firearms off duty, pursuant to their authority as peace officers. This allegation has special significance here because Officer Brown's firearm was a key instrument in his misconduct. In sum, the allegations that Officer Brown's authority as a peace officer extended beyond his on-duty hours make the fact that he was technically off duty less relevant.

The District argues that Officer Brown was merely "pursuing his lost cell phone" and "doing his own thing," "not attempting to make a lawful arrest" and "in no way conducting an investigation for his employer." The complaint's allegations, however, say otherwise. Plaintiffs allege that Officer Brown was investigating a suspected theft under the authority and "color of law" conferred upon him by the District. The complaint also alleged a false arrest and false imprisonment cause of action based on Officer Brown's detention of plaintiffs at gunpoint, under color of authority. Whether Officer Brown's actions actually amounted to an attempt to arrest is a conclusion for a trier of fact to draw. (See *Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 30 (*Hesperia*) ["We do not resolve factual disputes at [the demurrer] stage of the proceeding."].) But it is reasonable to infer that an officer's conduct in drawing a firearm, identifying himself as an officer, and demanding that others comply with his commands were all actions signaling

11

that he sought to detain or arrest someone.  Moreover, as noted, the District has not developed any argument on appeal as to why the allegations underlying the false arrest and false imprisonment cause of action are substantively insufficient as to Officer Brown.  The District only argues that the complaint's allegations for that cause of action do not put Officer Brown's actions within the scope of his employment for respondeat superior purposes.

We conclude, in any case, that Officer Brown need not have been in the process of making an arrest for his actions to fall within the scope of his employment.  "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged."  (*C.A., supra*, 53 Cal.4th at p. 872.)  Although a fact-finder may ultimately decide otherwise, given the broad authority plaintiffs allege the District bestowed upon Officer Brown, we cannot say from the face of the complaint that his actions were unconnected to his duties as a District employee, regardless of whether he was technically on duty, within the District's jurisdiction, or attempting to make an arrest.

Case law supports this conclusion.  In *Petrocelli v. Workmen's Compensation Appeals Board* (1975) 45 Cal.App.3d 635 (*Petrocelli*), the Court of Appeal held that a police officer was performing his duties and entitled to workmen's compensation benefits when he fell and broke his arm while walking toward what he believed was a suspicious car.  (*Id.* at pp. 636–637.)  Although the officer was in uniform, he was off duty and leaving a movie theater located outside of his employer's jurisdiction.  (*Ibid.*)  He "was not engaged in the arrest or detention of anyone or in a search for or seizure of anything."  (*Id.* at p. 638.)  But the court nonetheless concluded that the officer's "mission, at the time of the injury, was to protect property, and to

12

prevent a crime or apprehend an offender if his investigation disclosed reasonable cause to take such action." (*Id.* at p. 638.) The court cited Penal Code section 830.1 establishing an officer's "statewide power" to "make an arrest upon reasonable cause to believe a public offense had been committed in his presence, with respect to which there was danger to property or of the escape of the perpetrator." (*Id.* at p. 637.)

While the officer in *Petrocelli* was in uniform and Officer Brown was not, Officer Brown wielded other trappings of his police authority, including his firearm, badge, and his repeated self-identification as a District police officer. He allegedly used all these symbols of "coercive power" to demand compliance from plaintiffs, who understood him to be acting as a police officer—even without a uniform. (See *Mary M., supra*, 54 Cal.3d at p. 216 [officers have "coercive power" over citizens and wield visible symbols of that power, including a marked car, uniform, badge, and gun].) Officer Brown did not need to be in uniform to effectively and repeatedly assert his authority as an officer. Notably, Penal Code sections 830.32 and 836, which plaintiffs allege are statutory sources of Officer Brown's authority as a District officer, include no requirement that officers be in uniform to exercise the powers described in those sections. And from a practical standpoint, it would be unreasonable to expect a peace officer to change into uniform before, for example, initiating an arrest for a public offense committed in the officer's presence, as Penal Code section 836, subdivision (a)(1) authorizes. For us to find plaintiffs' allegations of vicarious liability insufficient merely because Officer Brown was not in uniform would elevate form over substance.

Our conclusion is further supported by *Inouye v. County of Los Angeles* (1994) 30 Cal.App.4th 278 (*Inouye*). In *Inouye*, a police officer assigned to the Los Angeles County Department of Health ended his evening shift and placed

13

his County-issued gun in a weapons locker. (*Id.* at p. 280.) He then put his personal firearm in his belt holster and left work in his truck. (*Ibid.*) The plaintiff in that case, Fred Inouye, attempted to run the officer's truck off the road, pulled in front of the truck, and stopped abruptly. (*Ibid.*) When Inouye walked up to the truck and started yelling through the driver's side window, the officer decided to arrest Inouye to determine whether he was under the influence of alcohol or drugs. (*Ibid.*) The officer identified himself as a police officer and told Inouye to freeze, but Inouye smashed the window, and the officer drew his gun. (*Ibid.*) After again identifying himself and telling Inouye to freeze, the officer fired on Inouye because he made a motion as if reaching for a weapon. (*Ibid.*)

The Court of Appeal in *Inouye* reversed summary judgment in the County's favor after concluding that the County could not insulate itself from liability by deeming its off-duty safety officers "to not be engaged in the performance of their duties[.]" (*Inouye, supra*, 30 Cal.App.4th at p. 281.) The court made no mention of whether the officer was in uniform, relying instead on the fact that the history of Penal Code section 830.31—which was enacted at the same time as section 830.32 and also grants peace officer status to specialized officers—"reveals that the broad scope of authority plainly granted" in that section "was no accident." (*Id.* at p. 284; see Stats. 1989, ch. 1165, § 24.) The court held that because "the Legislature has clearly empowered safety police officers to make [Penal Code] section 836 arrests while off duty[,]" the officer "was indisputably acting in the scope of his employment as a County safety police officer at the time Inouye was shot." (*Inouye*, at p. 284.)

Like the officer in *Inouye*, the complaint alleged that Officer Brown was acting under the broad scope of authority granted by Penal Code section

14

830.32, and by the District's policies, to enforce the law, ensure the safety and security of property, seize and prevent the destruction of evidence, and when appropriate, make arrests. Accordingly, *Inouye* supports a finding that Officer Brown's alleged actions were within the scope of his employment.

The District relies on *Farmers* to argue that Officer Brown's conduct substantially deviated from his employment duties for personal purposes. In addition to *Farmers*, the District cites other cases in which courts found no basis for vicarious liability when employees sexually assaulted or harassed others, committed arson, or impersonated a building inspector. (See *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 297–299 (*Lisa M.*); *Farmers, supra*, 11 Cal.4th at pp. 1012–1013; *Hoblitzell v. City of Ione* (2003) 110 Cal.App.4th 675, 678 (*Hoblitzell*); *Maria D. v. Westec Residential Sec.* (2000) 85 Cal.App.4th 125, 130 (*Maria D.*); *Borg–Warner Protective Servs. Corp. v. Superior Court* (1999) 75 Cal.App.4th 1203, 1206 (*Borg-Warner*).)

But those cases are distinguishable. In the cases where employees committed sexual misconduct, their acts were deemed to be not typical of, or broadly incidental, to their duties. (See *Lisa M., supra*, 12 Cal.4th at p. 300 [ultrasound technician's sexual assault of patient was not "engendered by" or an "outgrowth" of the technician's employment]; *Farmers, supra*, 11 Cal.4th at p. 997 [deputy sheriff's targeting of a subordinate "for inappropriate touching and requests for sexual favors is not a risk that may fairly be regarded as typical of or broadly incidental to the operation of a county jail"]; *Maria D., supra*, 85 Cal.App.4th at pp. 129–130, 146 [private security guard who impersonated a police officer to pull someone over and then take her to another location to rape her, "was not acting as an official representative of the state" or misusing "the unique official authority conferred on a public law

15

enforcement officer"].)  Similarly, the officer in *Hoblitzell* who impersonated a building inspector, and the security guard in *Borg-Warner* who committed arson, were found to be acting well outside of their authority as employees. (See *Hoblitzell, supra*, 110 Cal.App.4th at p. 683 [officer "substantially deviated" from his employment duties when he acted outside the City's jurisdiction, outside his employment, and for personal reasons]; *Borg-Warner, supra*, 75 Cal.App.4th at pp. 1206–1208 [security guard who pled guilty to arson in connection with a fire at his employer's plant acted "outside the scope of employment"].)

In contrast, for the reasons discussed above, the allegations in this case support an inference that Officer Brown's conduct was "broadly incidental" to his duties as a peace officer for the District and within his statutory and employment authority.  (*Mary M., supra*, 54 Cal.3d at p. 209.)  Whereas the tortious acts of the employees in the District's cited cases strayed far afield from their duties, we cannot conclude that Officer Brown's actions—in retrieving what he allegedly believed was stolen property—are "so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."  (See *Farmers, supra*, 11 Cal.4th at p. 1003).

This leads us to our last point, which is that the policy objectives underlying respondeat superior support applying the doctrine in this case.  In determining whether an employee is acting within the scope of employment, the Supreme Court has considered whether imposing liability would achieve the following: (1) prevent recurrence of the tortious conduct; (2) give greater assurance of compensation for the victim; and (3) ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that

gave rise to the injury. (*Mary M., supra*, 54 Cal.3d at p. 209.) We conclude that these factors weigh in favor of applying respondeat superior here.

The first policy justification recognizes that imposing liability on the employer may create " 'a strong incentive for vigilance by those in a position "to guard substantially against the evil to be prevented." ' " (*Mary M., supra*, 54 Cal.3d at p. 214.) The state, acting through the Legislature, "has granted police officers extraordinary power and authority over its citizenry." (*Id.* at p. 216.) The Supreme Court has recognized that " 'police officers [exercise] the most awesome and dangerous power that a democratic state possesses with respect to its residents—the power to use lawful force to arrest and detain them.' [Citation.] Inherent in this formidable power is the potential for abuse." (*Id.* at pp. 216–217.) The facts alleged in this case are an example of such abuse because Officer Brown's misconduct "flow[ed] from the unique authority vested in police officers." (*Id.* at p. 218, fn. 11.) And unlike in cases involving sexual assault, here "it is neither startling nor unexpected that on occasion an officer will misuse [his] authority by engaging in assaultive conduct" when investigating a suspected crime or initiating an arrest as a peace officer. (*Id.* at p. 217.) Imposing liability incentivizes the District to guard against abuses of the broad authority it grants to its employee peace officers.

Turning to the second policy goal of providing greater assurance of compensation for the victim, we conclude that imposing vicarious liability would help achieve this goal. (*Hoblitzell, supra*, 110 Cal.App.4th at p. 687.) This is particularly true, as the Supreme Court noted in *Mary M.*, when officers engage in violent conduct. (*Mary M., supra*, 54 Cal.3d at p. 215.) "The Legislature has recognized that the imposition of vicarious liability on a public employer is an appropriate method to ensure that victims of police

17

misconduct are compensated." (*Ibid.*) For example, "a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct." (*Id.* at pp. 215–216 [listing decisions that have "recognized, at least implicitly, that vicarious liability is an appropriate method to ensure that victims of police misconduct are compensated"]; see, e.g., *Conway v. County of Tuolumne* (2014) 231 Cal.App.4th 1005, 1015 [officers are not immune from liability under Government Code section 820.2 when using unreasonable force when making an arrest or overcoming resistance to it].)

As for the third policy objective, which considers whether imposing liability spreads the risk of losses among the beneficiaries of the enterprise giving rise to the injury, the Supreme Court has characterized this assessment as "another way of asking whether the employee's conduct was 'so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Lisa M., supra,* 12 Cal.4th at p. 305.) For reasons already discussed, we conclude the connection between Officer Brown's employment duties and his misconduct in investigating a suspected theft and retrieving what he believed to be stolen property was not so attenuated that it would be unfair to allocate plaintiffs' losses to the District as an operating cost.

Accordingly, the respondeat superior doctrine's public policy objectives, along with the other reasons described above, lead us to conclude that the complaint sufficiently states causes of action against the District based on a theory of vicarious liability.

## II

The District makes separate arguments regarding plaintiffs' claim under the Bane Act, which prohibits "threats, intimidation or coercion"

18

designed to prevent a person's exercise or enjoyment of their constitutional or statutory rights.  (Civ. Code, § 52.1.)  Regarding this claim, the District contends that plaintiffs' cause of action fails because "a single incident of wrongful detention or false arrest is insufficient to make a claim[,]" and that the Bane Act does not apply to school districts because they are not business establishments.  The cases the District cites, however, do not support its position on either of these points.  In *Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766, the Court of Appeal addressed whether there was sufficient evidence of a Bane Act violation to submit that claim to the jury.  (*Id.* at p. 793.)  Nowhere in that case did the court conclude that a "single incident" was insufficient to make a Bane Act claim.  Similarly, it is unclear why the District cites *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, which discussed the requirement that any alleged interference with constitutional rights occur "by threats, intimidation, or coercion," and not mere negligence.  (*Id.* at pp. 958–959.)  That case also does not support the proposition that a "single incident" cannot support a Bane Act claim.

Likewise, we are not persuaded by the District's reliance on cases discussing Civil Code section 51 (the Unruh Act), which protects against discrimination by business establishments, to argue that the Bane Act (Civil Code section 52.1) is inapplicable here.  (See *Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 669 (*Brennon B.*) [holding that school district was not a "business establishment" under the Unruh Act]; *K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 755 [citing *Brennon B.* to conclude Civil Code section 51.9, like the Unruh Act, does not apply to public school districts]; *Stamps v. Superior Court* (2006) 136 Cal.App.4th 1441, 1449 (*Stamps*) [reversing trial court's ruling that was based on the erroneous

19

conclusion that the Bane Act is part of the Unruh Act].)  But the Bane Act is a separate section in the Civil Code, has a separate purpose in creating a cause of action for the denial of civil rights by means of threats and intimidation, and makes no mention of "business establishments."  (See Civ. Code, § 52.1.)  As the Court of Appeal in *Stamps* observed, despite some historical confusion about "the various components of the Unruh Act[,]" by its own terms the Unruh Act comprises only Civil Code section 51, and the " 'Bane Act is not part of the Unruh Act[.]' " (*Stamps*, at pp. 1449–1452 [" 'Subdivision (a) of [Civil Code] section 51 states: "This *section* shall be known, and may be cited, as the Unruh Civil Rights Act." ' "].)  Indeed, courts have applied and analyzed the Bane Act in suits against school districts.  (Cf. *Turnbull v. Lucerne Valley Unified School Dist.* (2018) 24 Cal.App.5th 522, 533 [recognizing the Bane Act as the "legal basis" for the plaintiff's third cause of action against the defendant school district and individual defendants]; *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 883 [affirming nonsuit on plaintiff's Bane Act claim against school district because of insufficient evidence, not the Act's inapplicability]; *McMahon v. Albany Unified School Dist.* (2002) 104 Cal.App.4th 1275, 1293 [analyzing whether summary judgment was appropriate for Bane Act cause of action against school district].)  We therefore reject the District's arguments regarding the Bane Act.[2]

## III

Finally, we turn to plaintiffs' cause of action against the District for Officer Brown's negligent hiring, supervision, and retention.  To plead such a

---

[2]     The District does not argue that a school district is not a "person" within the meaning of Civil Code section 52.1 or that the Bane Act itself precludes vicarious liability against a public entity for the acts of a "person" such as Officer Brown.  Accordingly, we do not decide these questions.

20

cause of action, a plaintiff must generally allege that: (1) an employer hired and supervised an employee; (2) the employee was incompetent or unfit to perform their work duties; (3) the employer knew or should have known that undue risk of harm would exist because of the employee's unfitness; (4) the employee's unfitness caused the plaintiff harm; and (5) the employer's negligence was a substantial factor in causing plaintiff harm.  (See CACI No. 426; *Federico v. Superior Court* (1997) 59 Cal.App.4th 1207, 1213–1214.)

The District argues the trial court was correct to grant its demurrer on grounds that the complaint failed to allege facts showing "that Brown had a past history of violence within the scope of his employment," or facts "to show actual knowledge by the employer to establish liability for negligent hiring, supervision and retention of Brown."  The District further argues that the complaint's allegations are "vague" and "non-specific," pointing to allegations about an alleged "code of silence" among officers.  But the District does not address the complaint's other allegations about the District's hiring, training, and supervision practices, nor does the District cite any statute or decision requiring that a plaintiff allege—at the pleading stage—specific facts regarding a defendant's history of violence or an employer's actual knowledge.  (See *C.A., supra*, 53 Cal.4th at p. 872.)

The complaint alleged, among other things, that the District owed plaintiffs a statutory duty to: (1) "conduct thorough background checks of persons it is considering hiring as police officers" to "identify past behavior indicative of the candidate's suitability to perform their duties as a police officer"; and (2) "adequately train and supervise their police officers to assure that they demonstrate their knowledge and understanding of [District] polices, and that they receive periodic training on de-escalation tactics, including alternatives to use of force."  The complaint further alleged that:

21

(1) District employees who were responsible for conducting background checks, training, or supervising officers "knew, or should have known, that [Officer Brown] was, or became unfit or incompetent to perform his work and duties as a police officer for [the District] and that such unfitness, or incompetence created a particular risk to members of the public, including plaintiffs"; (2) the "mistreatment and abuse of plaintiffs by [Officer Brown] was a reasonably foreseeable result of the negligent conduct" by District employees; and (3) District employees' negligence within the scope of their employment caused harm to plaintiffs.

While facts material to the existence of public entity liability must be pleaded with particularity, the Supreme Court has held that a plaintiff adequately pled a claim where he alleged, as the complaint does here, that a school district's employees "knew or should have known of [defendant's] dangerous propensities, but nevertheless hired, retained and failed to properly supervise her." (*C.A., supra*, 53 Cal.4th at p. 875.) Although the plaintiff in *C.A.* alleged "on information and belief" that the school district knew of past misconduct based on "personnel and/or school records," the Supreme Court acknowledged in *C.A.* that it would be "impracticable" to require a plaintiff to plead certain details, such as the identity of government employees, before undertaking discovery. (*Id.* at pp. 866–867, 872, 875.) As noted, to survive a demurrer, "each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*Id.* at p. 872.)

Reading the complaint broadly, as we must, we conclude that the allegations adequately plead the elements of a negligent hiring, supervision, and retention claim, and that additional facts about Officer Brown's history are not necessary to state a claim. Nor are plaintiffs required to allege the District had actual knowledge of Officer Brown's alleged propensity for

22

misconduct. The negligence standard articulated by *C.A.* for hiring, supervising, or retaining an assaultive employee—"knew or should have known" or "know or have reason to know" (*C.A., supra*, 53 Cal.4th at pp. 871, 875)—allows for imposing vicarious liability on an employer based on the supervisory personnel's constructive knowledge that an employee is prone to misconduct (*Hesperia, supra*, 85 Cal.App.5th at p. 26).

## DISPOSITION

The trial court's judgment of dismissal in favor of the District is reversed. The matter is remanded to the trial court with directions to vacate its order sustaining the District's demurrer to the plaintiffs' second amended complaint without leave to amend, enter a new order overruling the demurrer, and conduct further proceedings consistent with this opinion. Plaintiffs are awarded their costs on appeal.


BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.